The STATE of Ohio, Appellee,

v.

GILDEN, Appellant.

[Cite as *State v. Gilden* (2001), 144 Ohio App.3d 69.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–000276.

Decided June 15, 2001.

*Michael K. Allen,* Hamilton County Prosecuting Attorney, and *Judith Anton Lapp,* Assistant Prosecuting Attorney, for appellee.

*Stephen J. Wenke,* for appellant.

---

DOAN, Presiding Judge.

Following a jury trial, defendant-appellant, Antwaun Gilden, was convicted of burglary pursuant to R.C. 2911.12(A)(4). During the trial, the court permitted jurors to ask questions of the witnesses by submitting them in writing. Then, out of the jury's hearing, the court discussed whether the questions were proper with the attorneys. If the court determined that they were proper, it questioned the witness accordingly.

■ On appeal, Gilden presents six assignments of error for review. However, because the last of these assignments of error is dispositive of the appeal, we address it first. In his sixth assignment of error, Gilden states that the trial court erred by inviting jurors to ask questions during the trial. He contends that the procedure of having the jury ask questions violated the fundamental principles of the adversarial process by supplanting the advocate's judgment in the presentation of the case. We agree. For that reason, as well as numerous others, we hold that questioning by jurors is so inherently prejudicial that it should not occur under any circumstances.

The Ohio Supreme Court has not directly addressed the issue. All of the appellate districts that have addressed it have held that the decision whether to allow questions by the jury lies within the trial court's discretion and should not be reversed absent a showing of prejudice. But they have also universally condemned and discouraged the practice as fraught with danger. *State v. Wayt* (1992), 83 Ohio App.3d 848, 857–858, 615 N.E.2d 1107, 1112; *State v. Sheppard* (1955), 100 Ohio App. 345, 390, 60 O.O. 298, 322–323, 128 N.E.2d 471, 499, affirmed on other grounds (1956), 165 Ohio St. 293, 59 O.O. 398, 135 N.E.2d 340; *State v. Cobb* (July 24, 2000), Seneca App. No. 13–2000–07, unreported, 2000 WL 1049308; *Logan v. Quillen* (Oct. 27, 1995), Hocking App. No. 94CA26, unreported, 1995 WL 637059; *State v. Mascarella* (July 6, 1995), Tuscarawas App. No. 94AP100075, unreported, 1995 WL 495390; *State v. Sexton* (Nov. 24, 1982), Clark App. No. 1689, unreported, 1982 WL 3868; *State v. Ernst* (Oct. 29, 1982), Sandusky App. No. S–82–7, unreported, 1982 WL 6609. The federal courts, as well as a majority of other states, are in accord with these Ohio courts. See *United States v. Bush* (C.A.2, 1995), 47 F.3d 511, 514–515; *Commonwealth v. Britto* (2001), 433 Mass. 596, 609–611, 744 N.E.2d 1089, 1103–1104; *State v. Hays* (1994), 256 Kan. 48, 53–54, 883 P.2d 1093, 1098–1099; Sylvester, Your Honor,

*May I Ask A Question? The Inherent Dangers of Allowing Jurors to Question Witnesses* (1990), 7 Cooley L.Rev. 213; Annotation (1970), 31 A.L.R.3d 872.

Currently, only two states, Mississippi and Nebraska, completely ban all forms of juror questioning. Georgia bans only direct questioning, and Texas bans questions only in criminal cases. *Britto, supra,* at 610, 744 N.E.2d at 1103, fn. 6; *Wharton v. State* (Miss.1998), 734 So.2d 985, 990; *Morrison v. State* (Tex.Crim. App.1993), 845 S.W.2d 882, 884; *State v. Zima* (1991), 237 Neb. 952, 954–956, 468 N.W.2d 377, 379–380. The Supreme Court of Mississippi had previously held that the decision to permit juror questioning was within the trial court's discretion but had discouraged the practice. It finally forbade it outright, stating that "[o]ur prior warnings concerning juror questioning have apparently gone unheeded * * *." *Wharton, supra,* at 990.

The Mississippi court succinctly set forth the numerous problems associated with questioning by jurors:

"The most obvious problem with allowing jurors to question witnesses is the unfamiliarity of jurors with the rules of evidence. 'Our system is an adversary one which depends upon counsel to put before lay fact finders that which should be admitted in accordance with the rules of evidence and to keep from them that which should not be received in evidence.' * * * Other potential problems include (1) Counsel may be forced to either make an objection to a question in front of the juror who asks the question, at the risk of offending the juror, or withhold the objection and permit prejudicial testimony to come in without objection; (2) juror objectivity and impartiality may be lessened or lost; (3) if a juror submits a question in open court, the other jurors are informed as to what the questioning juror is thinking, which may begin the deliberation process before the evidence is concluded and before final instructions from the court; (4) if the juror is permitted to question the witness directly, the interaction may create tension or antagonism in the juror; and (5) the procedure may disrupt courtroom decorum. [Citations omitted.]" *Id.* at 990. See, also, *Cobb, supra; Mascarella, supra; Sexton, supra; Bush, supra,* at 515–516.

Some proponents of juror questioning argue that a procedure like that employed in the present case, the use of written questions reviewed by the judge and attorneys out of the hearing of the jury, can alleviate many of these problems. While it may indeed solve some of them, it does not remedy all. See *DeBenedetto v. Goodyear Tire & Rubber Co.* (C.A.4, 1985), 754 F.2d 512, 516–517; *Morrison, supra,* at 888; *Zima, supra,* at 956, 468 N.W.2d at 379–380; Berkowitz, Breaking the Silence: Should Jurors be Allowed to Question Witnesses During Trial? (1990), 44 Vand.L.Rev. 117, 136–139; Sylvester, *supra,* 7 Cooley L.Rev. at 222–223. Moreover, it does not remedy the fundamental problem with juror questioning, which is the "gross distortion of the adversary system and the

misconception of the role of the jury as a neutral factfinder in the adversary process." *United States v. Johnson* (C.A.8, 1989), 892 F.2d 707, 713 (Lay, C.J., concurring).

Enabled to ask the witnesses questions, the jury assumes the position of an advocate, actively seeking out the facts instead of grappling with what the lawyers have provided. Likewise, members of the jury may begin to deliberate well before the conclusion of the case if they are permitted to, in essence, "root" for one side over the other. *Cobb, supra; Mascarella, supra.* "It is difficult for jurors to be both active participants in the adversarial process, embroiled in the questioning of witnesses, and detached observers, passing on the credibility of the witnesses and the plausibility of the facts presented." *Bush, supra,* at 515.

 The jury's neutrality is crucial to reaching the truth in an adversary trial. Truth in the adversarial process emerges from the presentation of competing points of view about the events in question. The jury's role is to select the more probable theory of the case or "story." A lawyer's success in presenting a convincing story often depends on his or her ability to question the obvious or to demonstrate the truth of initially unlikely facts. "Every effort must be made to ensure that the jury will not close its mind to these unlikely possibilities before counsel has had the opportunity to fully develop and present them." *Johnson, supra,* at 713–714.

Counsel's job is to use his or her advocacy skills and knowledge of the case's details to elicit for the jury potential misconceptions in the witnesses' testimony and weaknesses in the other side's story. To allow the factfinder to join in this exploration encourages it to prematurely adopt the interpretation of one side or the other. In the process of interrogation, the jury loses the open-mindedness the process requires it to maintain until all of the evidence is in and court has given its instructions. *Id.* at 714.

 The fundamental worth of the adversary system turns on the proper roles of litigant, witness, judge, lawyer, and jury. The factfinder must remain neutral until the time comes for it to make its findings. Too much danger exists in the distortion of the jurors' role when an individual juror can, under the guise of neutrality, become an advocate in the process. *Id.* See, also, *State v. Hays* (1994) 256 Kan. 48, 56–57, 883 P.2d 1093, 1099–1100; Sylvester, *supra,* 7 Cooley L.Rev. at 219.

 Finally, jury neutrality promotes not only truth but also justice in a larger sense. *Johnson, supra,* at 714–715. While the search for truth is an integral part of the adversary process, due process and fundamental individual rights sometimes override the truth-finding function. *Hays, supra,* at 56, 883 P.2d at 1100; *Morrison, supra,* at 884–885. Our system of justice attempts to

protect against the incarceration of the innocent, even where innocence initially seems unlikely. The neutral jury provides the accused with the chance to present his or her interpretation of events to a decision-maker open to reasonable doubt. "When the jury becomes an advocate or inquisitor in the process, it forsakes its role of arbiter between the government and its citizens." *Johnson, supra,* at 714–715.

In allowing the jury to ask questions, the court invites the jury to go beyond the evidence presented by the attorneys and can undermine the attorney's strategy or theory of the case. Often, an unanswered question or vagueness in the state's case may be part of establishing reasonable doubt, which protects the rights of the defendant. Asking questions, particularly of the defendant, may cause jurors to demand that the defendant justify himself or herself, rather than to wait for the government to justify its prosecution. "Jury interrogation of defendants not only impairs the attainment of just results; it demeans the very appearance of justice." *Id.* at 715.

That courts continue to allow a discretionary practice in which the substantial danger outweighs its dubious benefits defies logic, see *Zima, supra,* at 956, 468 N.W.2d at 380; Berkowitz, *supra,* 44 Vand.L.Rev. at 141–143; Sylvester, *supra,* 7 Cooley L.Rev. at 223–224, particularly given the Mississippi court's experience that trial courts had ignored its condemnation of the practice. *Wharton, supra,* at 990. In fact, one court, while holding that questioning lies within the trial court's discretion, went on to make the incongruous statement that "[b]alancing the risk that a juror's question may be prejudicial against the benefit of issue-clarification will almost always lead trial courts to disallow juror questioning, in the absence of extraordinary or compelling circumstances." *Bush, supra,* at 516. Similarly, another court stated that "the potential risk that a juror question will be improper or prejudicial is simply greater than a trial court should take, absent such compelling circumstances as will justify the exercise of [judicial discretion]." *DeBenedetto, supra,* at 516.

In our view, "the judicial process is better served by the time-honored practice of counsel eliciting evidence which is heard, evaluated, and acted upon by jurors who have no investment in obtaining answers to questions they have posed." *Zima, supra,* at 956, 468 N.W.2d at 380. Therefore, the better course is to ban jury questioning altogether.

■ Further, we hold that the practice of questioning by jurors is so inherently prejudicial that the defendant need not affirmatively show prejudice. Where the role of the jury as a neutral fact-finding body is significantly modified, the underpinnings of our system, designed to ensure trial by a fair and impartial jury, are compromised. Prejudice in that situation invariably exists, but it may

be so subtle and invasive that the defendant may have difficulty demonstrating it with particularity. See *Johnson, supra*, at 711, fn. 1; *Morrison, supra*, at 889.

Accordingly, we hold here that the trial court erred in allowing the jurors to ask questions of witness, even by using the procedure of written questions submitted to the court. We sustain Gilden's sixth assignment of error, reverse his conviction, and remand the case for a new trial.

In his second assignment of error, Gilden contends that the state failed to present sufficient evidence to support his conviction. Our holding in Gilden's sixth assignment of error does not render the issue of sufficiency moot, since the state's failure to present legally sufficient evidence would bar a retrial. See *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541, 546–547; *State v. Ashbrook* (Apr. 30, 1997), Hamilton App. No. C–960535, unreported, 1997 WL 208148.

The state's evidence showed that Gilden ran when approached by police officers. The officers observed him going from door to door in a housing complex, attempting to force his way into an apartment. As one of the officers yelled at him to stop, he jerked open the door to an apartment and entered. A woman began screaming at him to get out. When the officer entered the apartment, he saw a woman, standing near three small children, who was very upset. She told the officer, "He's in there; get him!" After a struggle, the officer eventually subdued Gilden and arrested him. The woman later stated that she did not know Gilden and did not invite him into the apartment.

This evidence, when viewed in a light most favorable to the prosecution, could have convinced a rational trier of fact that Gilden trespassed in a permanent or temporary habitation of another person when that person was present or likely to be present. Consequently, the evidence was sufficient to support his conviction for burglary pursuant to R.C. 2911.12(A)(4). See *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. Accordingly, we overrule Gilden's second assignment of error. His other assignments of error are moot, and we, therefore, decline to address them. See App.R. 12(A)(1)(c).

*Judgment reversed*
*and cause remanded.*

WINKLER and SHANNON, JJ., concur.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.