JOURNAL ENTRY AND OPINION
Defendant-appellant Jaron L. Smith, date of birth, March 20, 1979, appeals from his jury trial conviction for two offenses: (1) receiving stolen property (a motor vehicle) in violation of R.C. 2913.51, a fourth degree felony; and, (2) failing to comply with a signal of a police officer to bring the fleeing motor vehicle to a stop, which vehicle operation created a substantial risk of harm to persons or property, in violation of R.C. 2921.331(B) and (C)(5)(a)(ii), a third degree felony. For the reasons adduced below, we affirm.
A review of the record on appeal indicates that the trial commenced on February 12, 2001. During the trial, the state offered the testimony of four witnesses.
The first witness for the state was Village of Bratenahl Police Officer Gregory Barton. This witness testified that he was on regular patrol traveling in the westbound direction of Interstate 90 on October 16, 2000, when, at approximately 1:30 a.m., he noticed a blue 1983 pickup truck broken down on the berm. The officer stopped to investigate. The owner of the pickup stated that the drive shaft of the truck had broken, causing the truck, which was otherwise in good physical condition, to be inoperable. The officer then took the owner of that truck home, which was approximately three minutes driving time from the location of the disabled truck.
After taking the owner home, the witness immediately returned to the location of the disabled truck. At the truck, the witness observed a man standing at the driver's side window looking into the truck, and also observed another vehicle (a blue 1990 Buick sedan) in front of the disabled truck; another man was inside the Buick. The man who had been looking into the disabled truck, identified in court as the appellant by the officer, approached the witness at the scene. The officer exited his patrol car, approached the man, and noticed broken glass on the ground near the disabled truck. The officer, having grown suspicious of the broken glass, spoke with the man. According to the officer, the man had no identification, identified himself as "Derrick Hill," and gave two social security numbers. The officer checked the police computer data bank using this information, but no positive results were obtained. The officer then decided to detain "Mr. Hill" and attempted to handcuff him. As he did so, "Mr. Hill" turned and ran back to the Buick, got in, and the car sped away. As the Buick departed, the officer observed the license plate, which, upon further investigation, identified the owner as a resident of East Cleveland. The officer then called for back-up to aid in the pursuit of the Buick.
The officer pursued the Buick westbound on Interstate 90 with lights and sirens activated and visible to the Buick, exited onto Martin Luther King Boulevard, traveled around a bit further before ending the pursuit at East 120th Street and Thornhill when the Buick stopped momentarily in a vacant lot on a dead-end street. The Buick then turned around and came at the pursuing officer's car. Before reaching the officer's car, the Buick drove off the road near some trees and the occupants, including the appellant, jumped out and began to run. Tr. 99. Ms. Lisa Nelson, who had jumped out of the front passenger door, was apprehended by the officer at the scene. Cleveland Police officers apprehended appellant a few minutes later. The driver of the Buick was not apprehended that morning.
The appellant and Ms. Nelson were then transported to the Bratenahl police station, where appellant and Ms. Nelson each gave a statement to the police. Tr. 105.
The witness, who observed the Buick at close range at the initial stop and after the Buick was stopped by the police at the end of the pursuit, noticed that the plastic on the steering column near the ignition had been peeled, which indicated that the car had been stolen and was started without using the ignition key. The witness described that he viewed the peeled steering column after the pursuit had ended, while he was "standing on the left, left rear side of the vehicle, behind the vehicle." Tr. 102. The officer never saw the appellant drive the Buick. Tr. 109.
The officer later spoke with the registered owner of the Buick, Harlene Harris, who had reported the Buick as having been stolen from her apartment. Tr. 103-104.
The second witness for the prosecution was Ms. Lisa Nelson, who corroborated the fact that she was in the Buick that particular morning with appellant and Derrick Hill (aka Derrick Reese). According to this witness, Hill, her paramour, was driving the Buick, and appellant was in the back seat. The witness corroborated the testimony of Officer Barton that the Buick stopped at the scene of the disabled truck. While stopped on the berm along the interstate, appellant told her that he wanted to go to the west side of Cleveland to steal a car. Tr. 117. While fleeing in the Buick from Officer Barton, appellant was in the back seat urging Hill to elude the police by saying multiple times "shake them." Tr. 120, 122, 124. According to the witness, the Buick was traveling "well over a hundred miles an hour" and she could see the pursuing policeman's flashing lights and hear the sirens. Id. After finally stopping the Buick, she ran because she had an outstanding warrant for her arrest. The witness admitted that she had prior convictions for forgery, uttering and theft. She also admitted that she voluntarily gave a written statement to the police following her arrest that morning. Tr. 121.
The witness, who stated that Hill had been driving the Buick for the two months that she had known him, did not know that the Buick was stolen. Tr. 123. She did observe the physical damage to the Buick's steering column. Hill explained this damage by telling her that someone had stolen the Buick from him (Hill).
On cross-examination, Nelson testified that charges against her stemming from this case were dropped in exchange for her testimony in the case. Tr. 126-127.
The third witness for the prosecution was Village of Bratenahl Police Sergeant Joseph Fishbach, a police veteran with eighteen years of total police experience. The witness testified that he responded to Officer Barton's call for back-up and arrived at the location where the pursuit had ended after the Buick had been stopped. Ms. Nelson was already in custody at that point and, shortly after his arrival, Cleveland police had apprehended the appellant. The witness assisted in searching the area for Hill and inspecting the Buick, and then had the Buick towed to the Bratenahl police station. The witness corroborated the fact that the steering column had been peeled, and that this damage was visible from the perspective of the rear seat. Tr. 134.
At the Bratenahl police station, Sergeant Fishbach took written statements from Ms. Nelson and the appellant subsequent to advising them of their constitutional rights. The appellant, who acknowledged that he understood his rights, voluntarily gave his statement within one hour after being apprehended. Tr. 137, 142. The appellant's written statement to the police, see State Exhibit A, was read into evidence over the objection of the defense. Tr. 138-140. Although the appellant stated that the purpose of the trip that night was to steal a car, the witness understood that the appellant was referring to a car other than the Buick used in the chase. Tr. 142.
The fourth, and final, witness for the prosecution was Ms. Harlene Harris, who testified that she was the owner of the Buick used in the chase and that the Buick had been stolen approximately one month prior to the chase herein. When the car was returned to her by the police, she observed that the door and trunk locks were broken and the steering column had been peeled. She stated that this damage happened after the car had been stolen from her.
At that point, the state rested and, over the objection of the defense, placed State Exhibit A into evidence. Tr. 150-152. The defense then stated that it would not call any witnesses on its behalf. Tr. 152. The court then took a short recess. When the trial resumed, the defense made a motion for acquittal pursuant to Crim.R. 29(A), which was overruled. Tr. 153-160.
The court then instructed the jury as to the law to be applied. Tr. 163-186. With regard to the offense of receiving stolen property, the court additionally instructed the jury on complicity. The parties, who were satisfied with the instructions, had no objections to the stated charge of the court. Tr. 186.
The parties then presented their closing arguments. Tr. 187-207. The court then gave the jury some additional instructions before sending them off to begin their deliberations. Tr. 208-212.
The jury returned guilty verdicts on both counts on February 14, 2001. Appellant was sentenced on March 21, 2001 to 1 year on count one and 2 years on count two, consecutive, with credit for time served.
Appellant presents ten assignments of error for review. Where appropriate, certain assignments will be discussed jointly.
The first assignment of error provides:
 I. THE TRIAL COURT ERRED IN ADMITTING MR. SMITH'S WRITTEN STATEMENT THAT HE INTENDED TO STEAL A CAR, WHEN THAT STATEMENT HAD NO PROBATIVE VALUE REGARDING THE CHARGES IN THE INDICTMENT AND WHERE ITS ADMISSION WAS UNFAIRLY PREJUDICIAL TO MR. SMITH.
At trial, Sergeant Fishbach read into the record the appellant's written statement to the police. Prior to doing so, the defense objected to the statement on the grounds of relevance (Evid.R. 402) and undue prejudice (Evid.R. 403). See Tr. 135. The court admitted the statement as a hearsay exception as an admission by a party/opponent under Evid.R. 801(D)(2)(a), and as evidence of appellant's then existing state of mind under Evid.R. 803(3). See Tr. 136. In relevant part, the appellant's police statement, as read by Sergeant Fishbach, provided the following:
 * * *. I am twenty-one years of age and I live at 638 Eddy Road, Apartment number 3, Cleveland, Ohio, 44108. He [Mr. Reese] picked me up on Eddy Road to go steal a car so I can go joy riding. We get on the freeway and pull over to a truck. Reese get out of car to go see what was wrong with the truck. Next thing I know, the police pull up behind the truck to see what was going on, Reese jumped back in the car and pulled off. I jumped out the car an ran, because I was scared and the police pulled up on me and put me in the police car and brought me here [the Bratenahl police station]. And this is question number one. Do you know where Reese lives? No. Question number two, Who is the female in the front seat? I don't know her name. Three, Did you enter the truck on the freeway? No, I stayed in the back seat of the other car with the woman and finally, Is there anything else that you want to say to me? No. * * * (Tr. 139-140, explanation and emphasis added.)
In this assignment, appellant argues that the use of the appellant's intention to steal another car was irrelevant in that it violated Evid.R. 404(B)'s prohibition against the use of "other acts" evidence. Appellant also argues that this intention to steal another car should have been excluded because it was unduly prejudicial in violation of Evid.R. 403.
Evid.R. 404(B) provides:
 Rule 404. Character Evidence Not Admissible to Prove Conduct; Exceptions; Other Crimes.
* * *
 (B) Other crimes, wrongs or acts. Evidence of the other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Evidence of "other acts" is admissible if,
 * * * there is substantial proof that the alleged similar act was committed by defendant. State v. Carter (1971), 26 Ohio St.2d 79, 55 O.O.2d 130, 269 N.E.2d 115, paragraph two of the syllabus, and if the evidence also tends to prove identity, scheme, motive or system. (Footnote omitted.)
State v. Broom (1988), 40 Ohio St.3d 277, 282-283, 1988 Ohio LEXIS 463 at 14-15.
In the present case, the appellant's police statement indicated that his purpose in going out that evening in the Buick was to steal a car (one other than the Buick in which he was a passenger) and then go joy riding. There is no question that the appellant made this admission against interest, see Evid.R. 801(D)(2)(a), with regard to a planned future crime of an auto theft. This statement tends to prove a common motivation between the events, using appellant's admitted desire to steal the property of others and use it for his own criminal benefit. In the planned future auto theft, appellant was motivated to steal a car to further his own benefit, to-wit, personal entertainment (joy riding). In the present case, appellant urged the driver of the Buick to elude the police during the pursuit, thereby aiding and abetting that driver, and appellant, to retain the possession and use of a stolen vehicle for their own purposes, namely, transportation in furtherance of a planned auto theft. Accordingly, the other acts evidence, in the form of appellant's limited statement that he intended to steal another car, was admissible under Evid.R. 402 and 404(B).
Further, we conclude that this police statement evidence was not unduly prejudicial under Evid.R. 403(A) in that its probative value was not outweighed by the potential for unfair prejudice to appellant given the evidence supporting guilt in this case.
The first assignment of error is overruled.
The second assignment of error provides:
 II. THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION ON COUNT ONE, RECEIVING STOLEN PROPERTY, BECAUSE THERE WAS NO EVIDENCE PRESENTED THAT MR. SMITH KNEW THE BUICK WAS STOLEN.
A court reviewing the sufficiency of the evidence must view all the evidence in the light most favorable to the state and determine whether any reasonable trier of fact could find the essential elements of the crime had been proven beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259. Sufficiency is a test of adequacy; that is, whether the evidence is legally sufficient to sustain the verdict as a matter of law. State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
R.C. 2913.51(A) defines the offense of receiving stolen property:
 (A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.
In the present case, appellant had reasonable cause to believe that the Buick had been stolen based on the evidence. Officer Barton testified that the peeled steering column was visible as he stood behind the Buick on its left side. Tr. 102. If the damaged column was visible from the officer's vantage point behind the car, the jury could reasonably conclude that the damaged column was visible from a closer vantage point, namely, the rear seat behind the driver which was occupied by appellant during the pursuit. The peeled steering column is indicative of a car having been stolen. Further, Ms. Nelson testified that appellant, who himself had professed a desire to steal cars, urged the driver of the fleeing Buick to elude the police. From these facts the jury could infer that appellant had reason to believe that the Buick was stolen, otherwise, why urge flight from the police when all appellant was allegedly doing was sitting in the back seat of a friend's car. An innocent explanation for appellant's actions is absent from the record.
The second assignment of error is overruled.
The third assignment of error provides:
 III. MR. SMITH'S CONVICTION ON COUNT ONE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
The sixth assignment of error provides:
 VI. MR. SMITH'S CONVICTION ON COUNT TWO WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
These two assignments will be discussed jointly since they both argue the manifest weight of the evidence. We are guided by the following standard of review:
 When reviewing a claim that the judgment in a criminal case is against the manifest weight of the evidence, this court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, citing State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
State v. Grady (Mar. 14, 2002), Cuyahoga App. Nos. 79662 and 79663, unreported, 2002 Ohio App. LEXIS 1093 at 20-21.
The offense of receiving stolen property has been defined in the discussion on the second assignment of error, supra. In arguing the weight of the evidence relative to the first count, appellant posits that appellant was incapable of seeing the peeled steering column from his vantage point in the rear seat behind the driver. Further, even if appellant had viewed the peeled steering column, appellant suggests that he would have been under the same belief that the driver of the Buick was its owner and that the Buick had sustained the damage when it was stolen from Mr. Reece aka Harris.
These arguments are unpersuasive. First, as noted in the discussion of the second assignment of error, supra, there is a reasonable inference that the appellant could view the peeled steering column from the rear seat behind the driver. Second, the record does not demonstrate that appellant knew of Mr. Reece's aka Harris's explanation provided to Ms. Nelson for the damage to the Buick.
The offense of failing to comply with a signal to stop is defined in R.C. 2921.331(B), as follows:
 (B) No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop.
With regard to this second count, appellant argues that Ms. Nelson's testimony was not credible, and as such, the jury should not have given weight to her testimony that appellant urged the Buick's driver to elude the pursuing police.
This argument is unpersuasive. The tenor of Ms. Nelson's recollections was generally consistent with the testimony of the police officers, and with the written statement the appellant made to the police. Reece/Harris was driving, appellant was in the back seat behind the driver, the Buick sped away from the police, and the occupants of the Buick ran from the Buick after it had come to a stop. While Ms. Nelson clearly had an interest to fabricate a story in order to avoid her own prosecution, the jury was aware of the fact that she was a witness for the state. The jury was free to assess her credibility and decided to believe her testimony to the detriment of appellant, an admitted auto theft entrepreneur. Instead of appellant speculating that Ms. Nelson made up the damaging and false story only to save herself, it is equally plausible to suggest from the same evidence that Ms. Nelson was listening to her conscience and faithfully carried out her oath to tell the truth. Either way, we cannot conclude that the jury clearly lost its way or created a manifest miscarriage of justice in returning its guilty verdicts.
The third and sixth assignments of error are overruled.
The fourth assignment of error provides:
 IV. THE TRIAL COURT ERRED IN ALLOWING THE STATE TO AMEND COUNT ONE OF THE INDICTMENT.
In this assignment appellant argues that the trial court, prior to the voir dire of the jury panel, erred in amending count one, receiving stolen property, to change the name of the owner of the stolen Buick in question, from Albany Anthony (the owner of the disabled truck) to Harlene Harris.
This court recently examined the amendment of an indictment prior to the commencement of a trial, stating:
 Pursuant to Crim.R. 7(D), the trial court has discretion to amend the indictment "provided no change is made in the name or identity of the crime charged." Where the amendment to an indictment requires proof of an essential factual element which the original indictment did not, "the amendment of the indictment changes the identity of the crime charged in contravention of Crim.R. 7(D)." Vitale, supra at 701, quoting State v. Woody
(1986), 29 Ohio App.3d 364, 365, 505 N.E.2d 646.
State v. Mader (Aug. 30, 2001), Cuyahoga App. No. 78200, unreported, 2001 Ohio App. LEXIS 3842 at 13; also, see, State v.Vitale (Cuyahoga, 1994), 96 Ohio App.3d 695, 645 N.E.2d 1277.
In the present case, the amendment of count one, which changed the name of the victim, did not change the name or identity of the crime charged. "An amendment to an indictment which changes the name of the victim changes neither the name nor the identity of the crime charged." State v. Owens (1975), 51 Ohio App.2d 132, paragraph six of the syllabus, which cites In re Stewart (1952), 156 Ohio St. 521, and Dye v.Sacks (C. A. 6, 1960), 279 F.2d 834. The precise name of the victim herein was not an essential factual element for demonstrating the offense of receiving stolen property; it is sufficient that it was proven that the Buick was not owned by the driver of the fleeing Buick or the appellant. We see no prejudice to appellant in the amendment of the indictment to reflect the particular name of the Buick's true owner.
The fourth assignment of error is overruled.
The fifth assignment of error provides:
 V. THE TRIAL COURT ERRED IN ITS JURY INSTRUCTIONS REGARDING THE CRIME OF RECEIVING STOLEN PROPERTY ALLEGED IN COUNT ONE.
The seventh assignment of error provides:
 VII. THE TRIAL COURT ERRED IN ITS JURY INSTRUCTIONS REGARDING THE CRIME ALLEGED IN COUNT TWO.
The fifth and seventh assignments of error will be discussed jointly since they both argue error arising from the trial court's jury instructions.
In the fifth assignment appellant argues that the trial court failed to properly instruct the jury on the following: (1) "reasonable cause to believe" that the Buick was stolen; (2) evaluation of the credibility of accomplice testimony; (3) complicity; and, (4) the definition of "purpose."
In the seventh assignment appellant argues that the trial court failed to properly instruct the jury on the following: (1) the degree of proof required for the enhancement specification of the flight from police creating a substantial risk of serious physical harm; (2) complicity; and, (3) evaluation of the credibility of accomplice testimony.
The record reflects that the defense filed proposed jury instructions with the court on the date the trial commenced, February 12, 2001; a copy of this filing is in the record. On the afternoon of February 13, 2001, the trial court passed out copies of its special written instructions to the jury, and asked the jury to listen to the court's oral recitation of the general instructions until the point when the court reached the area concerning the special instructions. Tr. 162. When the court reached the area of special instructions, the court stated that the jury could read these special instructions as the court read them to the jury. There were no objections raised by the parties up to this point.
The court then read its general instructions to the jury. Tr. 163-171. At Tr. 171, line 7, the record indicates the beginning of the reading of the special instructions on count one. At Tr. 178, line 21, the record indicates the beginning of the reading of the special instructions on count two. At Tr. 180, lines 1-3, the court asked counsel if everybody was reading the same instructions as the court; defense counsel stated "yes." At Tr. 186, lines 1-3, the court advised the jury that they would have their copies of the special instructions with them during their deliberations. When asked by the court, there were no objections, additions, or comments to the jury instructions by either party. Tr. 186. By failing to object to the written special instructions or the accompanying oral instructions, appellant has waived all but plain error therein. Crim.R. 30(A), 52(B); State v. Underwood (1983),3 Ohio St.3d 12.
In the context of a criminal case, a reviewing court should invoke the plain error doctrine with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Jenks (1991), 61 Ohio St.3d 259, 282, 574 N.E.2d 492;State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Accordingly, it is generally accepted that plain error does not exist unless, but for the error, the outcome of the proceeding would have been different. Jenks at 282; Long at paragraph two of the syllabus.
Considering the evidence in the case and the instructions as a whole, we cannot conclude that the outcome of the trial would have clearly been different but for the claimed errors.
The fifth and seventh assignments of error are overruled.
The eighth assignment of error provides:
 VIII. THE TRIAL COURT ERRED WHEN IT PERMITTED THE JURORS TO SUBMIT QUESTIONS TO BE ASKED OF THE WITNESSES.
The record indicates that the court permitted jurors, based on their note taking, to submit questions to a witness after counsel had concluded their examination. See Tr. 81. Prior to submitting the question to the witness, the trial court would determine whether the question was proper and permissible and, if so, relay that question in proper form to the witness. Id.
The record also indicates that only one question was offered up by the jury. After Ms. Nelson had concluded her examination by counsel, the court asked the jury whether they had questions of Ms. Nelson. One juror proposed the following question which was read into the record, "Why didn't she know the car was stolen for two months?" Tr. 129. The court responded thusly, "The question will not be asked because it was asked and answered. Ms. Nelson, you may step down." Id. The state then called Sergeant Fishbach to testify.
In support of this assignment, appellant relies upon Statev. Gilden (Hamilton, 2001), 144 Ohio App.3d 69, a case in which the trial court, after reviewing questions from the jury, would submit these juror questions to a witness. As recognized by Gilden, the majority of jurisdictions, including Ohio, other states, and Cuyahoga County, permit some form of questioning of witnesses by jurors within the discretion of the trial court and also require a showing of prejudice to warrant reversal. Id. at 71-72, citing in part State v. Sheppard (Cuyahoga, 1955), 100 Ohio App. 345, 390, affirmed on other grounds (1956),165 Ohio St. 293. In Gilden, some of our colleagues in the First Appellate District of Hamilton County broke with this established line of precedent and banned outright the practice of permitting jurors to question witnesses under any circumstances without a showing of prejudice.
As can be seen from the record of the present case, no question from the jury was posed to any of the witnesses. The only question which was offered up by the jury was not posed to the witness. Thus, Gilden is not analogous to the facts of the case sub judice. Furthermore, the effect of not asking the witness the question posed by the juror left the jury to consider the evidence which had been supplied to it through the examinations of counsel. The negative concerns surrounding the practice of juror questioning which were raised inGilden, in particular, loss of juror objectivity and neutrality, prematurely commencing the jury's deliberative process, and inviting the jury to go beyond the evidence presented by the parties thereby restricting the right to counsel, are not present in this case because no juror question was posed to any witness.
Appellant presents a final argument in support of this assignment by opining that the juror question practice created an inequity among jurors by giving jurors who wish to ask questions a greater opportunity to participate in the fact-finding role than those jurors who do not ask questions because the non-questioning jurors may not be adept at writing a question and therefore their unvoiced questions will not be answered. See appellant's brief at 27-28. Appellant surmises, without authority, that this alleged inequity deprived the accused of a right to twelve equal jury members, "i.e., twelve member (sic) with an equal opportunity to participate and shape the outcome of the case. Id. at 28. First, the record does not suggest that any of the jurors were incapable of forming or writing a coherent question; to infer otherwise is idle speculation. Second, as previously stated, no juror question was posed to any witness in this case. All the jury members were equal in participating and shaping the outcome of the case based on the evidence presented by the parties; no juror questions were asked or answered by any witness so as to inject evidence not supplied by the parties.
The eighth assignment of error is overruled.
The ninth assignment of error provides:
 IX. MR. SMITH WAS DENIED HIS CONSTITUTIONAL RIGHT TO APPEAL IN VIOLATION OF FEDERAL AND STATE DUE PROCESS BY THE INADEQUACY OF THE RECORD PREPARED IN THE INSTANT CASE.
In this assignment, appellant argues that unidentified portions of the amended trial transcript record may be inaccurate and urges this court to reject the entire amended transcript. This alleged error, that some portions of the amended transcript are inaccurately transcribed, is generalized speculation and is not demonstrated with reference to any particular inaccuracy therein. See App.R. 12(A)(3) and (7). We note that the record in this case has already been supplemented once pursuant to App.R. 9(E) with a corrected trial transcript and a copy of the written special instructions (which was absent from the originally filed record on appeal). Absent identifying the particular inaccuracy in the amended record on which this assignment is based, we have nothing upon which to determine that the record is still inaccurate and in need of further correction or supplementation pursuant to App.R. 9(E). Having failed to demonstrate the alleged error in the amended record, we find no merit in this assignment.
The ninth assignment of error is overruled.
The tenth, and final, assignment of error provides:
 X. MR. SMITH WAS DENIED HIS RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
In this assignment appellant initially sets forth the applicable standard of review for alleged ineffective assistance of trial counsel. Appellant next makes the statement that his trial counsel rendered ineffective representation in the following instances: (1) failing to object to the improper jury instructions which were the subject of assignments of error V and VII, supra; (2) failing to object to the trial court's failure to include in the originally filed record the written special instructions to the jury which were the subject of assignment of error VIII, supra; and, (3) failing to object to Ms. Nelson's testimony that appellant intended to steal a car. See appellant's brief at 32. Then, appellant makes the following one-sentence conclusory statement, "Accordingly, the convictions should be reversed and the case remanded for a new trial." Id.
The standard of review for a claim of ineffective assistance of trial counsel was recently set forth by this court in Statev. Grady (Mar. 14, 2002), Cuyahoga App. Nos. 79662 and 79663, unreported, 2002 Ohio App. LEXIS 1093 at 15-16:
 To prevail on a claim of ineffective assistance of counsel, a defendant must show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. State v. Goodwin
(1999), 84 Ohio St.3d 331, 334, 703 N.E.2d 1251, quoting Strickland v. Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674, 104 S.Ct. 2052. A Sixth Amendment violation does not occur unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. State v. Bradley (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373. To establish prejudice, a defendant must show that there exists a reasonable probability that, were it not for counsel's errors, the result of trial would have been different. Id. at paragraph three of the syllabus.
First, as previously determined, the failure to object to the special instructions did not constitute plain error, hence appellant cannot demonstrate prejudice stemming from the failure of counsel to object. Second, appellant can demonstrate no prejudice with regard to the failure of counsel to object to the deficiency in the originally filed record on appeal because that record was amended and the parties filed amended briefs based on the filing of the amended record. Third, appellant can demonstrate no prejudice in failing to object to Ms. Nelson's direct examination testimony (at Tr. 117-118) that appellant stated that he intended to steal a car on Cleveland's west side, because appellant admitted to this intention in his written police statement. Having failed to demonstrate prejudice, appellant's claim of ineffective assistance of counsel is without merit.
The tenth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TERRENCE O'DONNELL, J., CONCURS; ANNE L. KILBANE, J., CONCURS INJUDGMENT ONLY.