DECISION
Appellant, Charles Grimmett, appeals from his conviction in the Franklin County Court of Common Pleas for one count of felonious assault and one count of possession of cocaine, and sets forth the following assignments of error:
 ASSIGNMENT OF ERROR #1: THE TRIAL COURT ERRED WHEN IT ALLOWED THE JURY TO ADDRESS QUESTIONS TO WITNESSES IN THE INSTANT ACTION, IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS AND RIGHT TO A FAIR TRIAL UNDER THE FIFTH
AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.
 ASSIGNMENT OF ERROR #2: APPELLANT'S RIGHT TO DUE PROCESS AND RIGHT TO A FAIR TRIAL UNDER THE 5TH AND 14TH
AMENDMENTS OF THE UNITED STATES CONSTITUTION WERE VIOLATED WHEN THE PROSECUTOR, IN THE INSTANT ACTION, COMMITTED PROSECUTORIAL MISCONDUCT.
 ASSIGNMENT OF ERROR #3: APPELLANT'S CONVICTION OF FELONIOUS ASSAULT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
On December 29, 2000, Elza Marks was driving in the area of Hudson and Deming when he saw a friend near a crowd outside Mac's Bar who looked like he needed help. Marks participated briefly in a fight outside the bar and, along with most of the others, began to leave when the police started to arrive. Marks was walking towards a woman who held his coat when he was hit on the back of the head twice. Marks did not see who hit him. Marks was taken to the hospital and received stitches to his scalp.
Columbus Police Officers Bernard Anderson and Richard Mays, along with OSU Police Officer Thompson, were dispatched to the area on the report of a fight involving bricks and possibly a gun. As the three officers approached the area, a man later identified as appellant ran in front of their unmarked car carrying a shovel and ran towards the crowd in front of the bar. Officers Mays and Thompson got out of the cruiser and saw appellant hit Marks with the shovel. The officers identified themselves as police, pulled out their guns and ordered appellant to put the shovel down. Appellant then struck Marks a second time. Appellant threw the shovel down, re-entered the bar and hid in the ladies rest room. He voluntarily left the rest room and was arrested. In the search following his arrest, Officer Christopher Hogan found cocaine in appellant's pocket.
Appellant presented a somewhat different version of his encounter with Marks. On December 29, 2000, appellant went to Mac's Bar, while waiting to pick up a pizza and subs ordered from the shop across the street. Appellant testified that, while placing his order, he told an acquaintance his family was celebrating the birth of appellant's great-nephew and he was given cocaine by this acquaintance, apparently as a gift.
Appellant testified that, shortly after he ordered a beer, four men entered the bar, one of whom assaulted an older man, and a fight broke out. Appellant, in an attempt to break up the fight, escorted one of the four men out of the bar where he encountered another large crowd of people. The man appellant had removed from the bar turned and struck appellant in the mouth, appellant was then hit in the back with a brick by an unknown individual. The fight in the bar apparently spilled into the street.
Appellant ran from the area, was chased by several people, and hid beside a porch. Appellant stated he grabbed a shovel from a nearby yard and headed back towards the bar, although his reason for doing so is vague and unclear. Appellant admitted he could have gone south or north on Deming, away from the area. Appellant testified that, when he arrived back at the bar, his niece, sister-in-law and brother were in the crowd and Marks was ready to throw a brick towards the crowd. Appellant swung the shovel at Marks' hand to force him to drop the brick. As a result of hitting Marks' hand with the shovel, appellant testified that Marks then hit himself in the head with the brick. Appellant testified he hit Marks a second time because he was trying to get up and still had the brick in his hand. Appellant denied hearing the police shout at him.
The jury found appellant guilty of both counts and he was sentenced to four years for the felonious assault and six months for possession of cocaine with the time to be served concurrently.
In his first assignment of error, appellant argues the trial court erred by allowing the jurors to ask questions of witnesses. At the conclusion of direct and cross-examination of each witness, the court permitted jurors to submit questions in writing, which were then reviewed by the trial judge and attorneys before the witness was permitted to answer. Appellant does not object to any specific questions asked but, in reliance on State v. Gilden (2001), 144 Ohio App.3d 69, argues such proceeding is inherently prejudicial and should never be permitted.
This court addressed the issue in State v. Fisher (2001), Franklin App. No. 01AP-614. We disagreed with Gilden and held that whether to allow jurors to ask questions was within the discretion of the trial court and the decision would not be reversed absent a showing of prejudice or abuse of discretion.
Appellant did not object to permitting jurors to ask questions and the assignment of error must be analyzed under a plain error doctrine. Crim.R. 52 allows a reviewing court to reverse for error which affects substantial rights but was not preserved as error for appeal. Even though the application of plain error is to be taken with the utmost caution, it is sometimes necessary in exceptional circumstances in order to prevent a miscarriage of justice. State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus. Plain error is found where, but for the error, the outcome of the trial would have been otherwise. State v. Franklin (1991), 62 Ohio St.3d 118. A review of the procedure used by the trial court and the specific questions asked by the jury fails to show that substantial rights of appellant were affected or that he was prejudiced in any way. Appellant's first assignment of error is overruled.
In his second assignment of error, appellant objects to the following statements made by the prosecutor in closing argument:
 * * * He [appellant] took a shovel, held it with TWO HAND AND SWUNG IT AT ELZA MARKS, ELZA MARKS. HIS STATEMENTS TO YOU WERE THAT HE TRIED TO HIT A BRICK IN ELSA'S [sic] HAND. AND THE BRICK, WHEN HE HIT THE BRICK, THE BRICK HIT HIS HEAD.
 THERE WAS NO BRICK EVER FOUND OR NO BRICK SEEN IN THE IMMEDIATE AREA. i DON'T THINK THERE WAS A BRICK, BUT THAT'S MY OPINION. [Tr. at 226-227.]
 TO THE BEST OF MY ABILITY, YESTERDAY, I TRIED TO SHOW YOU THAT BETWEEN ELSA'S [sic] TESTIMONY AND THE DEFENDANT'S, THAT ELZA WASN'T EVEN LOOKING AT MR. GRIMMETT WHEN MR. GRIMMETT HIT HIM WITH THE SHOVEL.
 SO, DID ELZA CAUSE TO BRING ABOUT THAT SERIOUS PROVOCATION? I DON'T THINK SO. * * * [Tr. at 233.]
 IS IT SERIOUS PHYSICAL HARM? YES. * * * THEY SENT HIM HOME, AND HE CONTINUED TO HAVE PROBLEMS; HIS VISION WAS HAVING PROBLEMS; HIS EARS WERE HAVING PROBLEMS.
 ANOTHER PART OF THE DEFINITION OF SERIOUS PHYSICAL HARM INVOLVES ACUTE PAIN. ELZA SAID THAT IT EVEN HURT HIS EYES SO BAD THAT HE COULDN'T EVEN WATCH T.V. IN A DARK ROOM, AND THAT ACUTE PAIN LASTED. HE CRIED AND HE SAT IN A DARK ROOM, * * * FINALLY WENT BACK AND GOT STRONGER DRUGS TO GET HIM THROUGH IT. * * * [Tr. at 228-229.]
Again, no objections were made to the statements by the prosecutor and, applying Crim.R. 52(B), we find no plain error. Prosecutors are given considerable latitude during closing arguments. State v. Mauer (1984), 15 Ohio St.3d 239. The test for prosecutorial misconduct in closing argument is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. State v. White (1998), 82 Ohio St.3d 16. The prosecutor should not express personal opinions as to the credibility of witnesses, nor should the prosecutor argue facts not in evidence. State v. Davis (2001), Franklin App. No. 01AP-382.
Appellant contends the first two statements by the prosecutor were an expression of the prosecutor's opinion as to appellant's credibility.
To the extent the first statement was an expression of the prosecutor's opinion, it was fleeting and brief, and we cannot find it affected the outcome of the trial or substantially affected appellant's rights. Further, the prosecutor's statement finds support in the record, as both Officers Anderson and Mays testified that they saw no bricks in or around the area.
As to the second comment, appellant concedes it was a "veiled opinion by the prosecutor." Again, we do not find this statement affected the outcome of the trial. This statement also finds support in the record as the officers testified to seeing appellant run towards Marks, hit him with the shovel while Marks was standing and hitting him again while Marks was on the ground. The officers did not testify as to any action by Marks directed towards appellant.
In the last statement, the prosecutor clearly misstated or exaggerated Marks' injuries. There was no evidence of injury to Marks' ears. Marks testified that the pain prevented him from watching television and that he could only sit in a dark room, as bright lights hurt his eyes, but he did not testify he cried from the pain. Marks also testified he made a second visit to the hospital because of the pain and was given Percocet but there was no evidence as to whether this was stronger medication than what was prescribed for him at the time of his first visit.
Nonetheless, we do not find the outcome was affected by this prosecutorial misconduct and did not affect appellant's rights. The essential issue was not the extent of Marks' injuries but whether appellant acted under the influence of sudden passion or in a sudden fit of rage brought on by serious provocation by Marks so as to be guilty of aggravated assault, a fourth degree felony, rather than felonious assault, a second degree felony. Appellant's second assignment of error is overruled.
In this third assignment of error, appellant argues his conviction for felonious assault is against the manifest weight of the evidence and the evidence would only support a conviction for aggravated assault.
In State v. Thompkins (1997), 78 Ohio St.3d 380, 386-387, 389, the Ohio Supreme Court defined manifest weight of the evidence and set forth the role of an appellate court in reviewing a verdict to determine whether the verdict is supported by the manifest weight of the evidence as follows:
 * * * The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.
 With respect to sufficiency of the evidence, "`sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." * * * In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. * * *
 * * * Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.) Black's [Law Dictionary (6 Ed. 1990)], at 1594.
 When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs [v. Florida (1982), 457 U.S. 31], 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").
 Appellant and the witnesses for the state presented different versions of the event. Credibility of the witnesses and the weight to be given to their testimony is for the trier of facts. State v. DeHass (1967), 10 Ohio St.2d 230.
 Even appellant's testimony does not support the claim he acted under sudden passion or rage. The evidence does not support a finding that Marks had a brick or was trying to throw it at the crowd appellant claimed included his family members. Appellant's niece testified she walked to the bar, saw appellant when he first came out and got assaulted. She did not see her father, appellant's brother, and left to return home where she did not call the police. She did not testify as to the presence of appellant's sister-in-law. Appellant left the area and provided no logical explanation for his return. He admitted he could have left the area by going north or south on Deming.
 Officer Mays saw appellant strike Marks with a shovel twice, but saw no brick in Marks' hand and found no bricks in the vicinity. It was within the province of the jury to reject appellant's testimony that he struck Marks' hand with a shovel and that Marks then hit himself in the head with a brick, or that appellant was enraged because he thought Marks would throw a brick towards his family. Appellant's conviction was not against the manifest weight of the evidence and his third assignment of error is overruled.
 For the foregoing reasons, appellant's first, second and third assignments of error are overruled, and the judgment of the trial court is affirmed.
Section 3, Article IV, of the Ohio Constitution provides:
 (4) Whenever the judges of a court of appeals find that a judgment upon which they have agreed is in conflict with a judgment pronounced upon the same question by any other court of appeals of the state, the judges shall certify the record of the case to the supreme court for review and final determination.
In Whitelock v. Gilbane Bldg. Co. (1993), 66 Ohio St.3d 594, paragraph one of the syllabus, the Ohio Supreme Court held:
 Pursuant to Section 3(B)(4), Article IV of the Ohio Constitution and S.Ct.Prac.R. III, there must be an actual conflict between appellate judicial districts on a rule of law before certification of a case to the Supreme Court for review and final determination is proper.
 We find our judgment in this matter to be in conflict with Gilden, and the clerk of the Tenth District Court of Appeals is instructed to certify the record of this case to the Ohio Supreme Court for review and final determination on the following issue:
 Is the practice of a trial court of allowing members of a jury to submit questions to the court and attorneys for possible submission to witnesses per se prejudicial to a criminal defendant.
Judgment affirmed and conflict certified to Ohio Supreme Court.
BRYANT and KLATT, JJ., concur.