JOURNAL ENTRY AND OPINION
{¶ 1} A Cuyahoga County jury found Bridgette Moss guilty of complicity to commit trafficking in LSD and complicity to commit drug trafficking.[1] The trial judge sentenced her to serve two years imprisonment. On appeal, Moss assigns the following errors for our review:
 {¶ 2} "The trial court erred by allowing the jury to questionwitnessed (sic) during the appellant's trial.
 {¶ 3} "The trial court erred by allowing the introduction of tapedtelephone calls to be heard by the jury that were not provided to defensecounsel through discovery.
 {¶ 4} "The introduction of questionably audible tapes whichallowed the jury to considered (sic) unfairly prejudicial evidencedeprived the appellant of a fair trial."
 {¶ 5} Having reviewed the evidence and the pertinent law, we affirm the judgment of the trial court.
 {¶ 6} In the state's case-in-chief, the prosecution characterized Moss as a person who arranged for drugs to be sold and purchased in exchange for a finder's fee.
 {¶ 7} Several law enforcement agencies learned of Moss after James R. Cummings was arrested, plea bargained, and convicted for possession of LSD. He agreed to cooperate with law enforcement and participated in a sting, which the Westlake, Lakewood, and Westshore Enforcement Bureau orchestrated. Cummings was provided with a wire and marked money. He contacted Moss and made the first drug buy at her home. The officers confiscated five bags of suspected crystal methanphetamine.
 {¶ 8} Two days later Cummings purchased cocaine from Moss. Moss was heard on tape confirming that she can also secure LSD.
 {¶ 9} Afterwards, law enforcement wired Cummings for a third buy. He purchased drugs from a David McGilvray. The police verified the purchase via marked money on Mr. Gilvray's possession. During the trial the officers related that Moss first conversed with Allen Grabo about purchasing LSD. Grabo called McGilvray, agreed on a price and Grabo informed Moss. Moss then notified Cummings, who appeared at Moss' home on the day of the third buy. Cummings wore a wire and entered her home for about ten minutes; thereafter, he exited with a Christopher Smith. Smith and Cummings joined Grabo and McGilvray and completed the purchase. Cummings then notified the police, who intercepted Grabo's car. The police retrieved the money and arrested the parties.
 {¶ 10} Moss's husband testified as her alibi. He stated that on the night of the third buy Moss never left the house. He acknowledged that Smith was at his home when Cummings arrived. Moss' husband stated Cummings and Moss did not converse. At the conclusion of the trial the jury convicted Moss of complicity on the second buy where cocaine was purchased and complicity to commit trafficking in LSD on the third buy.
 {¶ 11} In her first assigned error, Moss argues the trial court erred by allowing the jury to submit questions for the witnesses during trial. We disagree.
 {¶ 12} At the outset, we note Moss did not object to this procedure during trial. Therefore, we review this assigned error under the plain error doctrine.[2] Crim. R. 52(B) provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."
 {¶ 13} In State v. Gilden,[3] the First District Court of Appeals found that permitting jurors to submit written questions to the judge for submission in open court to testifying witnesses, after the judge had an opportunity to review them for evidentiary propriety and the parties were given an opportunity to object, was a per se violation of a defendant's right to due process, to trial by a neutral jury and the right to counsel. The court noted:
 {¶ 14} "The most obvious problem with allowing jurors to question witnesses is the unfamiliarity of jurors with the rules of evidence. * * * Other potential problems include (1) Counsel may be forced to either make an objection to a question in front of the juror who asks the question, at the risk of offending the juror, or withhold the objection and permit prejudicial testimony to come in without objection; (2) juror objectivity and impartiality may be lessened or lost; (3) if a juror submits a question in open court, the other jurors are informed as to what the questioning juror is thinking, which may begin the deliberation process before the evidence is concluded and before the final instructions from the court; (4) if the juror is permitted to question the witness directly, the interaction may create tension or antagonism in the juror; and (5) the procedure may disrupt courtroom decorum."[4]
 {¶ 15} Gilden, however, was the first Ohio Appellate case to hold that questioning jurors is so inherently prejudicial that it should not occur under any circumstances. The court's holding was based mostly on Nebraska and Mississippi law.[5] Most courts, including this district, have allowed judges to permit jurors to submit questions to witnesses, subject to an abuse of discretion, and have required a defendant to demonstrate prejudice before such a practice will result in a reversal.[6] This court's position on this issue was established in State v. Sheppard,[7] where we stated that, although it is not encouraged, "the right of a juror to question a witness during trial is within the sound discretion of the court."[8]
 {¶ 16} We are aware that this issue is pending in the Supreme Court of Ohio in the case of State v. Fisher;[9] however, we decline to delay this appeal. Moss has not pointed to any specific question as prejudicial, nor has she alleged that the trial court abused its discretion in allowing the practice. Accordingly, we find the trial court did not commit plain error and overrule this assigned error.
 {¶ 17} In her second and third assigned errors, Moss challenges the admissibility of the taped telephone conversations setting up the drug transactions. Her first complaint is that the State failed to provide copies of the tapes to her counsel.
 {¶ 18} Crim.R. 16(B)(1)(a) provides that upon motion of the defendant, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph relevant recorded statements by the defendant. Further, subsection (c) permits a defendant to inspect and copy tangible objects.[10]
 {¶ 19} Moss interprets these rules as mandating the State to copy the tapes for her. In support of her position, Moss relies on State v.Bidinost.[11] In that case, the prosecutor verbally informed the defendant of an existing oral statement made by the defendant to the police. The summary of the statement, however, was never reduced to writing as required by the rule.[12]
 {¶ 20} This case is not the same. In this instance, the rule only requires the State to make the tapes available for the defendant to inspect; the burden of physically copying the tapes falls on the defendant. At trial, the State played two taped conversations held between Moss and the informant. Moss's counsel objected, claiming he had never heard the tapes prior to trial. The trial court then conducted a hearing to determine whether Moss's counsel was given an opportunity to hear the tapes.
 {¶ 21} Moss's counsel claimed he only heard one tape. The testimony offered at the hearing on this issue reveals defense counsel had an opportunity to listen to the November 14 and 16, 2000 tapes on several occasions. The tape made of the November 22 conversation could not be found and has never been found. Moss has not demonstrated prejudice because the November 22 tape was not used at trial and because her counsel had an opportunity to listen to and copy the tapes. Accordingly, we conclude the State made the tapes available to Moss, as required under the rule. Nothing in the rule mandates the state to make copies of the tapes for the defense. Therefore, Moss's second assigned error is overruled.
 {¶ 22} In her third assigned error, Moss challenges the introduction of the taped conversations because of their questionable audibility.
 {¶ 23} The tapes at issue were played in open court for the jury to hear and given to the jury during deliberation. Admittedly, portions of the taped conversations are difficult to understand. In order to cure this problem, the State examined Cummings regarding the conversations. Defense counsel could have listened to the tapes with Moss in order to decipher her end of the conversations or clear any ambiguities that arose from Cummings' interpretation of the conversations. He chose not to do so and as we have already concluded, he failed to listen to both tapes even though they were made available to him.
 {¶ 24} Moss also argues other acts evidence was incorrectly admitted because the conversation after the transactions had been completed dealt with Moss' use of other drugs.
 {¶ 25} In State v. Wilkinson,[13] the Supreme Court of Ohio recognized that portions of tapes must be redacted to exclude from the conversations other acts evidence which is not inextricably related to the charged offense.
 {¶ 26} Even if the trial court had prevented the jury from hearing references to Moss's other acts, the State presented sufficient evidence for the jury to convict Moss. Accordingly, this assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and ANNE L. KILBANE, J., CONCUR.
[1] The journal entry dated Dec. 28, 2001 incorrectly states Moss was convicted of trafficking in LSD but refers to the complicity statute.
[2] Crim.R. 52(B).
[3] (2001), 144 Ohio App.3d 69.
[4] Id. at 72.
[5] See Id.
[6] State v. Belfoure, Cuyahoga App. No. 80159, 2002-Ohio-2933; Statev. Smith, Cuyahoga App. No. 79527, 2002-Ohio-2145; State v. Wayt (1992),83 Ohio App.3d 848, 857-858; State v. Sheppard (1955), 100 Ohio App. 345,390, affirmed on other grounds (1956), 165 Ohio St. 293; State v. Cobb, Senceca App. No. 13-2000-07, 2000-Ohio-01712; Logan v. Quillen (Oct. 27, 1995), Hocking App. No. 94CA26; State v. Mascarella (June 30, 1995), Tuscarawas App. No. 93 AP 100075; State v. Sexton (Oct. 29, 1982), Sandusky App. No. S-82-7.
[7] (1955), 100 Ohio App. 345.
[8] Id. at paragraph five of the syllabus.
[9] (Dec. 20, 2001), Franklin App. No. 01AP-614, cert. granted94 Ohio St.3d 1484.
[10] Crim.R. 16(B)(1)(C).
[11] (1994), 71 Ohio St.3d 449.
[12] Id.
[13] (1980), 64 Ohio St.2d 308.