OPINION
{¶ 1} Defendant-appellant, Michael A. Thomas, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of murder in violation of R.C. 2903.02 and felonious assault in violation of R.C. 2903.11. Because the trial court committed no reversible error, we affirm.
 {¶ 2} According to the state's evidence, on April 12, 2001 at approximately 6:30 p.m., defendant was driving a friend's automobile without permission when he ran into the rear of a stopped automobile that Lanh Pham, a Vietnamese immigrant, was driving; Lanh Pham's wife was a passenger in the automobile. Defendant was alone in the automobile he operated.
 {¶ 3} After the impact, Lanh Pham exited his automobile to assess the damage to his vehicle. Defendant also exited the automobile he had been driving and was yelling at Pham. When Pham and defendant met, defendant, without warning and absent provocation from Pham, punched Pham in the head. Pham fell to the ground. After Pham fell, defendant kicked Pham in the head approximately two times; defendant then fled the scene. As a result, Pham was rendered unconscious and suffered multiple skull fractures and brain injury, including a fatal cerebral herniation. Pham died on April 18, 2001. Police apprehended defendant after he fled into a nearby grocery store.
 {¶ 4} The state's evidence came from the testimony of witnesses who observed the automobile accident, defendant's unprovoked punch to Pham's head, defendant's apparent and repeated kicks to Pham's head, defendant's flight from the scene and defendant's apprehension. Additionally, Dianne Harris aka Dianne Tyus, the owner of the vehicle that defendant drove without permission, testified that defendant contacted her by telephone after the accident and informed her he had an accident in her car. At the time of the defendant's telephone call to Harris, police were at Harris' home because Harris earlier had contacted police to report her stolen vehicle.
 {¶ 5} While in police custody, defendant made a statement to the township police officer indicating he did not mean to hit Pham. On instruction, the officer transported defendant to the detective bureau of the sheriff's department. While defendant was at the detective bureau, defendant unsuccessfully attempted to escape.
 {¶ 6} As part of the police investigation, the vehicle that defendant drove at the time of the accident was tested for fingerprints. Only the fingerprints of the vehicle's owner were found in the vehicle. In addition, a swatch of defendant's clothing that was blood-stained was tested for DNA analysis. At trial, the parties stipulated that the DNA testing excluded Lanh Pham as a source of the DNA. The parties further stipulated the DNA testing indicated the blood stain was a mixture: the major contributor was consistent with defendant and the minor contributor was below reporting standards.
 {¶ 7} In contrast to the state's evidence, defendant testified he did not drive the automobile that ran into Pham's automobile on April 12, 2001, although defendant admitted that in the past he had borrowed Harris' automobile with her permission. According to defendant, defendant was with his brother in his brother's van at the approximate time of the accident. Defendant's brother dropped off defendant at the grocery store, and defendant was in the store only a few minutes before he was arrested.
 {¶ 8} By indictment filed April 26, 2001, defendant was charged with two counts of murder and one count of felonious assault. A jury trial resulted in a verdict finding defendant guilty of felonious assault and murder as a proximate result of defendant's felonious assault. The jury, however, found defendant not guilty of murder by purposely causing the death of Lanh Pham. By judgment entry filed June 20, 2002, the trial court sentenced defendant to 15 years to life for the murder conviction and eight years for the felonious assault conviction, with the sentences to be served concurrently. Defendant timely appeals and asserts twelve assignments of error:
 {¶ 9} "1. The trial court failed to suppress the custodial statements of the appellant thereby depriving his right to a fair trial.
 {¶ 10} "2. The court erred in allowing jurors to submit questions to witnesses, thus compromising their impartiality and thereby denying defendant his right to a fair trial.
 {¶ 11} "3. The appellant's motion to suppress the photo identification of the state's witnesses was not ruled on by the trial court, thereby denying appellant's right to a fair trial.
 {¶ 12} "4. The trial court erred by permitting testimony of appellant's escape attempt after his arrest when the court previously ruled the escape charges and indictment would be tried separately from this trial.
 {¶ 13} "5. The trial court erred when, on two occasions, it failed to strike hearsay comments made by the prosecutor and a state's witness.
 {¶ 14} "6. The state violated appellant's rights of a fair trial when the state cross-examined the appellant regarding the whereabouts of his witnesses.
 {¶ 15} "7. The trial court erred by permitting the introduction of evidence of the coroner's report when this report was not given to the defense in discovery, but presented only at trial thereby prejudicing the defendant's right to a fair trial.
 {¶ 16} "8. The appellant was denied a fair trial when, during closing arguments, the prosecutor told the jury to convict the appellant so he could not commit further crimes.
 {¶ 17} "9. The trial court erred by failing to instruct the jury on a lesser included offense of manslaughter.
 {¶ 18} "10. The trial court erred by not placing a jury question on the record while the defendant was present.
 {¶ 19} "11. The verdict is against the manifest weight of the evidence and the trial court erred in finding appellant guilty. This denied appellant a fair trial and due process of law as guaranteed by the United States Constitution and Article I, Section 10 of the Ohio Constitution.
 {¶ 20} "12. There was insufficient evidence to convict appellant. This denied appellant of his right to a fair trial."
 {¶ 21} Defendant's first assignment of error asserts the trial court's failure to suppress defendant's custodial statements pursuant to Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602 deprived defendant of his right to a fair trial.
 {¶ 22} "Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact. * * * At a suppression hearing, the trial court assumes the role of trier of fact, and as such, is in the best position to resolve questions of fact and evaluate witness credibility. * * * A reviewing court must accept a trial court's factual findings if they are supported by competent, credible evidence. * * * The trial court then applies its factual findings to the law regarding suppression of evidence. An appellate court reviews the trial court's application of the law de novo." State v. McNamara (1997),124 Ohio App.3d 706, 710. See, also, State v. Featherstone,150 Ohio App.3d 24, 2002-Ohio-6028, at ¶ 10.
 {¶ 23} Here, the trial court heard testimony from defendant and Officer John Mielke, a Clinton Township police officer, concerning events incident to defendant's statement. According to Mielke, defendant was in custody and had provided information attendant to his arrest. Without further police interrogation, defendant made an unsolicited statement in which he told Mielke that "he didn't mean to hit the guy. He had just stopped, and then that's when he hit him. He didn't mean to." (Tr. Vol. I, 10.) At the time of his statement, defendant had not been advised of his rights under Miranda. Defendant denied making such a statement. The trial court overruled the motion to suppress, concluding that defendant volunteered the statement.
 {¶ 24} In State v. Butts (Mar. 7, 2000), Franklin App. No. 99AP-576, this court noted that "`[i]f a suspect in a criminal investigation requests counsel at any time during questioning, he is not subject to further interrogation until a lawyer is provided or the suspect reinitiates the interrogation.' * * * The term `interrogation' under Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694, `refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.' * * * Whether conduct qualifies as `reasonably likely to elicit an incriminating response' necessarily depends on an examination of the facts and circumstances of each case." As Butts further observed, "Miranda does not affect the admissibility of `volunteered statements of any kind.' Miranda, at 478, 1630; State v. Waddy (1992), 63 Ohio St.3d 424, 440, 588 N.E.2d 819
(finding that statements not elicited, but volunteered, are not barred by Miranda)." Id.
 {¶ 25} Here, while defendant was in custody, he made an unsolicited statement to police. Because the trial court reasonably could determine defendant's statement was volunteered, the trial court as a matter of law properly denied defendant's suppression motion. See, e.g., Miranda at 478. Accordingly, defendant's first assignment of error is overruled.
 {¶ 26} Defendant's second assignment of error asserts the trial court's allowing jurors to submit questions to witnesses compromised the jurors' ability to be impartial and denied defendant his right to a fair trial. Because defendant failed to object, defendant must prove plain error. State v. Kelly, Franklin App. No. 02AP-195, 2002-Ohio-5797, at ¶ 26.
 {¶ 27} Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." However, even if defendant satisfies the requirements of Crim.R. 52(B), "Crim.R. 52(B) does not demand that an appellate court correct it. Crim.R. 52(B) states only that a reviewing court `may' notice plain forfeited errors; a court is not obliged to correct them. We have acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plain error `with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" State v. Barnes (2002), 94 Ohio St.3d 21, 27, quoting State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus.
 {¶ 28} In State v. Fisher (Dec. 20, 2001), Franklin App. No. 01AP-614, this court held "that the practice of allowing jurors to submit questions does not amount to plain error. Instead, cases should be carefully examined to ascertain whether there was an abuse of discretion in the process." But, see, State v. Gilden (2001), 144 Ohio App.3d 69, 74
("hold[ing] that the practice of questioning by jurors is so inherently prejudicial that the defendant need not affirmatively show prejudice"). See, also, State v. Fisher (2002), 94 Ohio St.3d 1484 (certifying a conflict with Gilden) and State v. Smith, 96 Ohio St.3d 1509,2002-Ohio-4950 (certifying a conflict with Gilden and State v. York [Mar. 28, 2002], Seneca App. No. 13-01-19).
 {¶ 29} As this court observed in Fisher, "[t]o the extent that assuming an active role encourages a jury to stay alert and pay attention to the proceedings, allowing jurors to submit questions can be viewed as a positive. If, on the other hand, a juror begins paying more attention to the process of devising and asking questions than to focusing on the evidence being presented, allowing that juror to submit questions can be a negative." Here, the record contains no evidence jurors paid more attention to the process of devising and asking questions than to focusing on the evidence presented. Further, as the trial court specified in its preliminary instructions to the jury, defendant's counsel was a joint decision maker concerning whether any juror's question was permissible under the Rules of Evidence. Accordingly, defendant's contention he was denied a fair trial because jurors were permitted to ask questions is unpersuasive. Defendant's second assignment of error is overruled.
 {¶ 30} Defendant's third assignment of error asserts the trial court denied him a fair trial because it failed to rule upon defendant's motion to suppress the photo identifications by state witnesses.
 {¶ 31} Crim.R. 12 requires that motions to suppress evidence be raised before trial. Additionally, "[a]n appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." State v. Williams (1977), 51 Ohio St.2d 112, paragraph one of the syllabus. See, also, Crim.R. 52(B).
 {¶ 32} At the suppression hearing, defendant conceded he might not have a basis to suppress the photo identifications, and thus requested that the trial court hold the motion in abeyance. Defendant never raised the issue again. Under those circumstances, defendant has not shown plain error. Defendant's third assignment of error is overruled.
 {¶ 33} Defendant's fourth assignment of error asserts the trial court erred in permitting evidence of defendant's escape attempt, as the trial court previously had ruled the escape charge would be tried separately; defendant asserts the evidence was highly prejudicial and violated defendant's right to a fair and impartial trial. In contrast, the state contends evidence of defendant's escape attempt demonstrated his "consciousness of guilt."
 {¶ 34} "It is well settled that `[t]he trial court has broad discretion in the admission of evidence, and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb the decision of the trial court.'" Barnes, supra, at 23, quoting State v. Issa (2001), 93 Ohio St.3d 49,64, certiorari denied (2002), 535 U.S. 974, 122 S.Ct. 1445. See, also, State v. Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, at ¶ 43. Our inquiry thus is confined to determining whether the trial court acted unreasonably, arbitrarily, or unconscionably in deciding the evidentiary issues about which defendant complains. Id.
 {¶ 35} In State v. Eaton (1969), 19 Ohio St.2d 145, 146, paragraph six of the syllabus, vacated in part on other grounds (1972), 408 U.S. 935,92 S.Ct. 2857, the Ohio Supreme Court held "[f]light from justice, and its analogous conduct, may be indicative of consciousness of guilt." See, also, State v. Williams (1997), 79 Ohio St.3d 1, 11, certiorari denied (1998), 522 U.S. 1053, 118 S.Ct. 703. Here, over defendant's objection, the trial court permitted Officer Mielke to testify about defendant's escape and recapture. In allowing the testimony, the trial court stated, "I will let in evidence that he tried to escape. But I don't want any details on how he tried to do it. I don't want anything about kicking a door in, simply that he was able to get out of his handcuffs. He tried to exit through a door, that turned out to be an office door, and he was caught." (Tr. Vol. II, 338-339.) In response to the state's subsequent inquiries about whether defendant attempted an escape, Mielke testified defendant slipped out of his cuffs and attempted to run through an office door that led to the deputy chief of detectives, where sheriff deputies subdued him.
 {¶ 36} Given that flight is permissible evidence of guilt, the issue resolves to whether the facts here render the evidence particularly damaging to defendant. Nothing in the record suggests defendant was subjected to any prejudice apart from that inherent in the nature of the evidence. Moreover, the trial court was careful to exclude prejudicial details of the escape and to consider the possible effect of its ruling on a subsequent trial on the escape charge. Under those circumstances, the trial court did not abuse its discretion in permitting Mielke to testify about defendant's escape attempt.
 {¶ 37} Nor did the trial court abuse its discretion in admitting evidence of broken handcuffs as rebuttal evidence. Defendant testified that at the time of his apprehension he had a fractured collarbone from a previous injury and, as a result, he suffered "almost unbearable" pain when he was handcuffed behind his back. (Tr. Vol. III, 128.) Defendant further testified he had three stitches in the palm of his hand.
 {¶ 38} Because defendant placed his physical condition into evidence, the trial court properly permitted as rebuttal impeachment evidence the broken handcuffs recovered following defendant's unsuccessful escape attempt. Indeed, during a sidebar conference to discuss the issue, defense counsel acknowledged, "[w]ell, obviously, my client opened his own door there. I was hoping to avoid getting into the display of the cuffs and the whole escape routine." (Tr. Vol. III, 136.) Defendant's fourth assignment of error is overruled.
 {¶ 39} In his fifth assignment of error, defendant asserts the trial court erred in failing to strike (1) hearsay comments of Paula Lee, a police radio dispatcher, and (2) the prosecution's hearsay comments.
 {¶ 40} Defendant failed to object to Paula Lee's testimony that she received a call from Dianne Harris, who claimed a friend had stolen and wrecked Harris' car. Absent objection, defendant must prove plain error. Kelly at ¶ 26. "As part of the inquiry into whether plain error occurred, a reviewing court `must examine the error asserted by the [defendant] in light of all the evidence properly admitted at trial and determine whether the jury would have convicted the defendant even if the error had not occurred.' * * * Reversal is warranted only if the outcome of the trial clearly would have been different absent the error. * * * In addition, plain error should be found only in exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Hill (2001), 92 Ohio St.3d 191, 203. See, also, State v. Moreland (1990),50 Ohio St.3d 58, 62, rehearing denied, 51 Ohio St.3d 704, certiorari denied, 498 U.S. 882, 111 S.Ct. 231.
 {¶ 41} Any error in the trial court's ruling does not rise to the level of plain error, as the jury would have convicted defendant in the absence of the alleged error. Even excluding Paula Lee's testimony, other state witnesses observed the automobile accident, defendant's punch to Pham's head, defendant's apparent and repeated kicks to Pham's head, and defendant's flight from the scene.
 {¶ 42} The second issue concerns defendant's statements to another inmate, Lee Williams. Defendant contends the prosecution's statements permitted the state to interject Williams' highly prejudicial and hearsay statements even though Williams never testified. Specifically, the prosecution asked defendant a series of questions, framed in terms of whether defendant made certain statements to Williams, such as admitting that at the time of the incident with Pham defendant was high on marijuana and Ecstasy, defendant "flipped out" and started beating the victim, and defendant fled the scene because he had a firearm and drugs. Defendant objected part way through the questioning, but the prosecution continued to inquire and defendant continued to answer. Thereafter the trial court and counsel conferred off the record, following which the trial court cautioned the jury that "what the attorneys say is not evidence unless it is — it supplies meaning to the answer of a question." (Tr. Vol. III, 158.)
 {¶ 43} Although the prosecution should have desisted from questioning after defendant's first objection until the trial court ruled, the trial court correctly admonished the jury the prosecution's comments were not evidence. Moreover, "[p]rosecutorial misconduct does not constitute reversible error unless it prejudicially affects the substantial rights of the defendant." State v. Bowles (May 11, 2001), Lake App. No. 99-L-075, dismissed, appeal not allowed, 93 Ohio St.3d 1412, citing State v. Lott (1990), 51 Ohio St.3d 160, 166, certiorari denied,498 U.S. 1017, 111 S.Ct. 591. Given the strength of the evidence against defendant and the cautionary instruction, we cannot conclude the prosecution's comments rise to the level of reversible error. See, e.g., Bowles, supra. Defendant's fifth assignment of error is overruled.
 {¶ 44} Defendant's sixth assignment of error asserts the state violated Crim.R. 16(C)(3) when it cross-examined defendant about the whereabouts of witnesses. In support of his argument, defendant relies on State v. Hannah (1978), 54 Ohio St.2d 84, 90 (finding prosecution's comment about failure of defendant's alibi witness to testify violated Crim.R. 16[C][3]).
 {¶ 45} At trial, defendant failed to object to the prosecution's cross-examination of defendant. Absent objection, defendant must prove plain error. Kelly at ¶ 26. See, also, Williams,51 Ohio St.2d at 112, paragraph one of the syllabus.
 {¶ 46} Crim.R. 16(C)(3) provides that "[t]he fact that a witness' name is on a list furnished under subsection (C)(1)(c), and that the witness is not called shall not be commented upon at the trial." As explained in State v. Simon (May 26, 2000), Lake App. No. 98-L-134, dismissed, appeal not allowed, 90 Ohio St.3d 1427 "[t]he intent of [Crim.R. 16(B)(4) and Crim.R. 16(C)(3)] is to bar the prosecuting attorney and the defense attorney from specifically referencing the fact that the opposing party failed to call someone whose name previously appeared on the opposing party's witness list. This affords the prosecuting attorney and the defense attorney the freedom to list all potential witnesses during discovery because they know that opposing counsel may not `score points' with the jury by drawing attention to a situation in which an individual who was designated as a potential witness was ultimately not called to testify at trial. The goal is to foster open discovery in criminal proceedings by prohibiting the prosecution and the defense from mentioning the absence of a witness in conjunction with the fact that the person was named on a witness list." (Emphasis sic.)
 {¶ 47} Here, the prosecution did not specifically reference defendant's failure to call a potential witness from the witness list to testify, but instead commented on defendant's general failure to call any witnesses who had some knowledge about the matter at trial. Such a comment is permissible, as "`[t]he prosecution is not prevented from commenting upon the failure of the defense to offer evidence in support of its case.'" State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 193, quoting State v. Williams (1986), 23 Ohio St.3d 16, 20, certiorari denied (1987), 480 U.S. 923, 107 S.Ct. 1385, rehearing denied, 481 U.S. 1033,107 S.Ct. 1966. Defendant's sixth assignment of error is overruled.
 {¶ 48} Defendant's seventh assignment of error asserts that because the final coroner's report was not given to defendant during discovery, the trial court erred in admitting it into evidence. "`Crim.R. 16(E)(3) * * * permits a trial court to exercise discretion in determining the appropriate sanction for a discovery violation.'" State v. Otte (1996), 74 Ohio St.3d 555, 563, certiorari denied, 519 U.S. 836,117 S.Ct. 109, quoting State v. Scudder (1994), 71 Ohio St.3d 263, 268, certiorari denied (1995), 515 U.S. 1164, 115 S.Ct. 2623. Further, "[a]lthough exclusion is an available sanction, a trial court is not required to impose that sanction. * * * The court does not abuse its discretion in admitting evidence undisclosed in discovery unless the record shows that the prosecutor's discovery violation was willful, that foreknowledge would have benefited the accused in preparing his defense, or that the accused was unfairly prejudiced." Otte at 563.
 {¶ 49} Here, as defendant noted at trial, the prosecution's failure to provide defendant with a final coroner's report during discovery was not willful. In addition, defendant has failed to show prejudice or to demonstrate how knowledge of the final report would have benefited him in preparing his defense, as he was provided a preliminary copy of the coroner's report that stated generally the report's conclusions. The trial court did not abuse its discretion in admitting the previously undisclosed final version of the coroner's report. Defendant's seventh assignment of error is overruled.
 {¶ 50} Defendant's eighth assignment of error asserts defendant was denied a fair trial due to the prosecution's inflammatory comments during closing argument. Specifically, defendant objected to the following:
 {¶ 51} "Don't give this defendant another chance because the next time it will be one of you, and it will be a friend —
 {¶ 52} "Mr. Rogers: Objection.
 {¶ 53} "Mr. Simms: — It will be a loved one. Convict him of all three counts. Thank you." (Tr. Vol. IV, 30.)
 {¶ 54} Subsequently, the trial court gave the following cautioning instruction:
 {¶ 55} "Ladies and gentlemen, before we continue on with the closing argument, I want to give you a cautioning instruction.
 {¶ 56} "One of the last statements made by the prosecutor was unwarranted and not really appropriate argumentation for closing remarks. Any conjecture about what the defendant might do in the future is simply that. And you are instructed to disregard that.
 {¶ 57} "We've ordered the statement that the prosecutor made be stricken from the record, and shouldn't be considered for any purpose. And it should not affect your deliberations in any matter. And you should consider only the evidence that was presented in the case.
 {¶ 58} "I will be instructing you later that you have to consider the facts of this case without sympathy or bias or prejudice. And I also will be instructing you that the issue of punishment, if it's appropriate, if the defendant is found guilty, is solely within the province of the court. You are so cautioned and instructed." (Tr. Vol. IV, 34-35.)
 {¶ 59} "`[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.' * * * As such, misconduct is not grounds for reversal unless the defendant has been denied a fair trial. * * * A prosecutor is afforded a certain degree of latitude in his concluding remarks, * * * may draw reasonable inferences from evidence at trial, and may comment on those inferences during closing argument. * * * The test regarding prosecutorial misconduct in closing argument is whether the remarks were improper and, if so, whether they prejudicially affected the defendant's substantial rights. * * * In making this determination, we view the allegedly improper remarks in context and consider the closing argument in its entirety to determine whether the remarks were prejudicial." State v. Hairston (Sept. 28, 2001), Franklin App. No. 01AP-252, appeal not allowed (2002), 94 Ohio St.3d 1433.
 {¶ 60} "`A prosecutor is at liberty to prosecute with earnestness and vigor, striking hard blows, but may not strike foul ones.'" State v. Frazier (1995), 73 Ohio St.3d 323, 341, certiorari denied (1996),516 U.S. 1095, quoting State v. Smith (1984), 14 Ohio St.3d 13, 14. However, it is inappropriate for a prosecutor to substitute emotion for reasoned advocacy in closing arguments. See, e.g., State v. Keenan (1993), 66 Ohio St.3d 402, 407-408. Here, the prosecution's comments substituted emotion for reasoned advocacy and were inappropriate.
 {¶ 61} One relevant factor to a due process analysis is whether prosecutorial misconduct was an isolated incident in an otherwise properly tried case. Keenan at 410. In this case, the prosecution's comments were a brief lapse and not part of a protracted series of improper arguments. Moreover, because "[a] presumption always exists that the jury has followed the instructions given to it by the trial court," Pang v. Minch (1990), 53 Ohio St.3d 186, 187, paragraph four of the syllabus, we must presume the jury properly disregarded the inappropriate prosecutorial comments that were stricken from the record. Defendant's eighth assignment of error is overruled.
 {¶ 62} Defendant's ninth assignment of error asserts the trial court erred in denying a request to instruct the jury on the lesser included offense of involuntary manslaughter.
 {¶ 63} "An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." State v. Deem (1988), 40 Ohio St.3d 205,206, paragraph three of the syllabus. An instruction on a lesser-included offense should be given only if the evidence reasonably supports both an acquittal on the crime charged and a conviction on the lesser-included offense. State v. Palmer (1997), 80 Ohio St.3d 543, 562, certiorari denied (1998), 525 U.S. 837, 119 S.Ct. 96.
 {¶ 64} R.C. 2903.02 prohibits murder and provides:
 {¶ 65} "(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.
 {¶ 66} "(C) Division B of this section does not apply to an offense that becomes a felony of the first or second degree only if the offender previously has been convicted of that offense or another specified offense."
 {¶ 67} R.C. 2903.04, involuntary manslaughter, provides "no person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony."
 {¶ 68} Contrary to defendant's contention, the evidence does not reasonably support an acquittal on the murder charge under R.C. 2903.02(B). According to the evidence, defendant punched Pham in the head absent any provocation, causing Pham to fall to the ground. Defendant then kicked or stomped on Pham's head two times after the victim had fallen to the ground. Pham died several days later, having sustained skull fractures and brain injury as a result of defendant's beating him. A jury reasonably could conclude defendant caused Pham's death as the proximate result of committing an offense of violence: felonious assault, a second degree felony. See, also, R.C. 2903.11(A)(1) and (D) (felonious assault). Because the evidence does not reasonably support an acquittal on the murder charge, an instruction on involuntary manslaughter was not required. See State v. Carter (2000), 89 Ohio St.3d 593, 600. Defendant's ninth assignment of error is overruled.
 {¶ 69} Defendant's tenth assignment of error asserts the trial court erred in failing to place on the record in defendant's presence a jury question during deliberations concerning an instruction about Count 1 of the indictment.
 {¶ 70} In State v. Abrams (1974), 39 Ohio St.2d 53, paragraph one of the syllabus, the Ohio Supreme Court held "[a] defendant in a criminal case has a right to be present when, pursuant to a request from the jury during its deliberations, the judge communicates with the jury regarding his instructions." Here, however, even if the trial court failed to place the question on the record, defendant was not prejudiced because defendant was acquitted of the charge contained in Count 1 of the indictment. Any error was harmless. Defendant's tenth assignment of error is overruled.
 {¶ 71} Defendant's eleventh and twelfth assignments of error assert the jury's verdict is against the manifest weight of the evidence and based on insufficient evidence. Because defendant's eleventh and twelfth assignments of error are interrelated, we address them jointly.
 {¶ 72} To the extent defendant challenges his conviction as not supported by sufficient evidence, we construe the evidence in favor of the prosecution and determine whether such evidence permits any rational trier of fact to find the essential elements of the offense beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387.
 {¶ 73} When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the factfinder's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. State v. Thompkins (1997), 78 Ohio St.3d 380, 387, reconsideration denied, 79 Ohio St.3d 1451, quoting Tibbs v. Florida (1982), 457 U.S. 31,42, 102 S.Ct. 2211 ("[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"). Conley, supra.
 {¶ 74} Defendant contends (1) the evidence fails to demonstrate an intentional killing, and (2) the absence of the victim's blood on defendant's clothing demonstrates the jury's verdict was against the manifest weight of the evidence. Defendant further contends that because the trial court failed to instruct the jury on the crime of involuntary manslaughter, the jury erroneously was only left to deliberate on an intentional killing.
 {¶ 75} Defendant was found guilty of felonious assault in violation of R.C. 2903.11 and murder in violation of R.C. 2903.02(B). Under R.C. 2903.11(A)(1), "[n]o person shall knowingly * * * cause serious physical harm to another[.]" See, also, R.C. 2901.22(B) (definition of "knowingly"). "`Knowingly' does not require the offender to have the specific intent to cause a certain result. That is the definition of `purposely.' Instead, whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." State v. Huff (2001), 145 Ohio App.3d 555, 563. (Footnote omitted.) "The test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria. * * * However, if a given result is probable, a person will be held to have acted knowingly to achieve it because one is charged by the law with knowledge of the reasonable and probable consequences of his own acts." State v. McDaniel (May 1, 1998), Montgomery App. No. 16221, appeal not allowed,83 Ohio St.3d 1435.
 {¶ 76} Here, witnesses' testimony of defendant's unprovoked punch to Pham's head and kicks to Pham's head after Pham had fallen to the ground show defendant acted with knowledge of the reasonable and probable consequences that such violence would cause serious physical harm to Pham. Because the evidence, construed in favor of the prosecution, permits any rational trier of fact to find the essential elements of felonious assault beyond a reasonable doubt, defendant's felonious assault conviction is supported by sufficient evidence.
 {¶ 77} Defendant's contention that the state failed to prove an intentional killing under R.C. 2903.02 similarly is unpersuasive. "The elements of felony murder charged under R.C. 2903.02(B) are: (1) cause; (2) the death of another; (3) as a proximate result of the offender's committing or attempting to commit; and (4) an offense of violence that is a felony of the first or second degree and that is not a violation of R.C. 2903.03 (voluntary manslaughter) or R.C. 2903.04 (involuntary manslaughter)." State v. Sexton, Franklin App. No. 01AP-398, 2002-Ohio-3617, at ¶ 38, appeal not allowed, 97 Ohio St.3d 1471,2002-Ohio-6347.
 {¶ 78} The underlying felony for which defendant was convicted was felonious assault with a culpable mental state of "knowingly." See R.C.2903.11(A)(1). Because "[t]he culpable mental state required to support a murder conviction is the same as must be proved to support a conviction for the underlying offense," Sexton at ¶ 38, and because defendant was convicted of murder under R.C. 2903.02(B), not 2903.02(A), the state was only required to prove a mens rea of "knowingly," not purposely or intentionally as required by R.C. 2903.02(A). Further, the state sufficiently proved proximate cause through the testimony of its expert witness, Dr. Dorothy Dean, deputy coroner, who opined Pham died from blunt impacts to the head, as well as through the testimony of lay witnesses who observed defendant's unprovoked punch to Lanh Pham's head and kicks to Pham's head after Pham had fallen to the ground.
 {¶ 79} Because the evidence, construed in favor of the prosecution, permits any rational trier of fact to find beyond a reasonable doubt the essential elements of felony murder under R.C.2903.02(B), the murder conviction is supported by sufficient evidence. Moreover, although defendant's evidence contradicted various aspects of the state's evidence, the jury's prerogative included weighing the credibility of the witnesses. Contradictory evidence in itself does not render a judgment against the weight of the evidence. See, e.g., Travelers Property Casualty v. Mengis (Dec. 15, 1988), Franklin App. No. 98AP-506. Accordingly, defendant's conviction for felonious assault and murder are supported by the manifest weight of the evidence. Defendant's eleventh and twelfth assignments of error are overruled.
 {¶ 80} Having overruled all twelve of defendant's assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
BOWMAN and TYACK, JJ., concur.