JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Christopher Jones, appeals his conviction from the lower court for intimidation, in violation of R.C. 2921.04, and assault with a peace officer specification, in violation of R.C. 2903.13
and 2903.13 (C)(3). Jones additionally appeals the trial court's denial of his motion for a new trial or in the alternative the trial court's lack of jurisdiction to rule upon the motion for a new trial. Upon review of the record and the legal arguments of the parties, we find this appeal without merit and affirm.
 {¶ 2} The facts pertinent to the issues on appeal are as follow. On July 24, 2001, Jones attended a Cleveland Indians baseball game and was subsequently arrested after the game for a traffic violation. On July 24, 2001, at approximately 10:20 p.m., officers from the mounted unit of the Cleveland Police Department, Albert Oliver ("Oliver") and Jerrold Zarlenga ("Zarlenga"), were detailed to traffic control immediately after the game in the downtown Cleveland area of Carnegie and East 14 Street. On that particular evening, there was heavy pedestrian and automobile traffic after the game.
 {¶ 3} Officer Oliver advised Officer Zarlenga that a black, two-door Chevy Cavalier was approaching his assigned intersection, traveling at a high rate of speed, heading southbound in the northbound lanes. Officer Zarlenga also witnessed the vehicle approaching the intersection and ordered the driver to stop several times. The driver eventually came to a screeching halt with the front of his vehicle crossing the plane of the crosswalk.
 {¶ 4} Both officers ordered Jones out of his vehicle. Jones refused to comply with their directives, rolled up his windows, refused to provide identification and began screaming profanities and racial slurs at the officers. Officer Oliver retrieved his police cruiser and parked it in front of Jones' vehicle to prevent Jones from fleeing the scene. Both officers attempted to remove Jones from his locked vehicle in order to place him under arrest. As Jones was being removed from his vehicle, the vehicle, which was apparently still in drive, rolled forward into Officer Oliver's parked police cruiser. Eventually, Jones was taken from his vehicle, handcuffed and placed into the back of the police cruiser.
 {¶ 5} Officers Zarlenga and Oliver continued to direct traffic in their assigned area, which had backed up considerably during the arrest of Jones. In addition, one of the officers contacted Sergeant Strother, a supervisor, to assist with Jones. Sgt. Strother assisted Jones out of the police cruiser to loosen his handcuffs and locate some identification for Jones, who would not reveal his name. At this point, Jones again became increasingly hostile, belligerent, and aggressive.
 {¶ 6} Thereafter, Zarlenga left traffic duty to assist Strother. As Zarlenga attempted to place Jones back into the cruiser, Jones injured Zarlenga's hand in the doorjamb of the cruiser. Jones continued to yell profanities and threaten the lives of Officer Zarlenga and his family during this second encounter. Jones was eventually taken to the police station. Later that evening of July 25, 2001, at approximately 2:30 a.m., Zarlenga received medical treatment at St. Vincent Charity Hospital for the injuries inflicted upon him by Jones.
 {¶ 7} Jones was indicted on August 22, 2001 on five counts: Count one, felonious assault with a peace officer specification against Officer Zarlenga, in violation of R.C. 2903.11; Count two, intimidation against Officer Zarlenga, in violation of R.C. 2921.04; Count three, intimidation against Officer Oliver, in violation of R.C. 2921.04; Count four, assault with a peace officer specification against Officer Zarlenga, in violation of R.C. 2903.13(C)(3); and Count five, assault with a peace officer specification against Officer Oliver, in violation of R.C. 2903.13(C)(3).
 {¶ 8} On January 24, 2002, prior to trial, the prosecutor nolled count five of the indictment. The trial proceeded, and the following witnesses testified for the state: Officer Oliver, Sgt. Strother, Officer Zarlenga and Elizabeth Gash, Director of Medical Records for St. Vincent Charity Hospital.
 {¶ 9} Officer Oliver testified first for the prosecution stating that he had been employed by the Cleveland Police Department for six-and-one-half years. On July 24, 2001, he observed Jones' vehicle headed southbound at a high rate of speed, well over the posted 25 mile-an-hour speed limit. (Tr. 180.) He heard the tires of the vehicle squealing, and he attempted to move 100-plus people out of the crosswalk because it appeared the vehicle might injure a pedestrian in the crosswalk. (Tr. 180 and 204.) Officer Oliver further testified that Jones' vehicle traversed the plane of the crosswalk. (Tr. 209.) Officer Oliver observed his partner order Jones to roll down his window and present some identification, but the driver locked the door. (Tr. 181-182.) Officer Oliver parked his cruiser in front of the vehicle "because he (Jones) was looking like he wanted to get away." (Tr. 182.) Oliver testified that Jones was ordered to step out the vehicle by Officer Zarlenga "more than five and it could have been 12 times." (Tr. 184.)
 {¶ 10} Officer Oliver further testified that he observed Sgt. Strother on scene, and a struggle ensued between Officer Zarlenga and Jones. (Tr. 186.) Jones was kicking and pushing at Sgt. Strother and Officer Zarlenga. Officer Zarlenga forced him back into the cruiser. (TR. 186). Officer Oliver additionally testified that Jones yelled profanities at Officer Zarlenga and stated he should have killed him. (Tr. 187). He testified that Jones was very belligerent and made several comments about killing the officers.
 {¶ 11} Sgt. Strother testified that he has been employed by the Cleveland Police Department in the mounted unit for the past 28 years. On July 24, 2001, Sgt. Strother observed Jones in the back of a cruiser using profanities, acting extremely agitated and aggressive and threatening to physically harm Officer Zarlenga and Sgt. Strother. (Tr. 297.) As Jones was removed from the cruiser, he became increasingly agitated and began to resist the officers by head butting, shoulder butting, and kicking Officer Zarlenga. Sgt. Strother observed Jones slamming his upper body towards Officer Zarlenga and subsequently injuring Zarlenga against the doorjamb of the police cruiser. Sgt. Strother did not notice any physical injuries on Jones. (Tr. 313.)
 {¶ 12} Officer Zarlenga testified that he has been employed by the Cleveland Police Department since March 1992. He testified that on July 24, 2001, he observed a black, two-door Chevy Cavalier pealing out from a parking lot with squealing tires after the game. (Tr. 383-384.) He observed the vehicle approach the intersection at East 14 Street and cross the two center lines of traffic in the opposite direction of the traffic flow for that lane. (Tr. 385.) He testified that a group of 100 to 150 people were attempting to cross the street when he observed the car. He grabbed his flashlight in hand and motioned for the vehicle to stop, but because of the excessive speed of the vehicle, which was estimated at 50 miles per hour plus, he feared the vehicle "was going to go right through me." (Tr. 391.) He testified that the nose of the car was in the crosswalk after the vehicle came to a complete stop. (Tr. 393.) Officer Zarlenga ordered Jones to show his hands, and Jones refused to comply. In response to that order, Jones rolled up his window, put the car in reverse and locked the door. Zarlenga testified that Jones was boisterous, very agitated and very irate, using profanities during the altercation. (Tr. 394-399.) In this struggle, Jones threatened the officers' lives and the lives of their families. (Tr. 407.) Jones attempted to head butt Officer Zarlenga and managed to kick Zarlenga in the knee and the shin. (Tr. 404.) When Officer Zarlenga forced Jones into the cruiser, Jones pushed Zarlenga into the cage of the cruiser resulting in an injury to his hand. Zarlenga's hand became numb, swollen and tingled. (Tr. 404-406.) Officer Zarlenga received physical therapy for his hand twice a week for over a month. He was unable to perform light duty or a desk job and was forced to take time off from work. (Tr. 410-411.)
 {¶ 13} Both Officers Oliver and Zarlenga acknowledged that Jones filed a citizen's report with the police review board alleging police misconduct. In that complaint, Jones reported that the officers spit in his face, kicked him and purposefully adjusted the handcuffs too tightly on his person.
 {¶ 14} Robert Harris, a friend and co-worker of Jones, and Louise Jones, the mother of Jones, testified for the defense. Harris testified that he did not observe Jones consume any alcohol at the game or use any drugs. Louise Jones testified as both a character witness and a witness to the injuries sustained by her son resulting from his arrest. During the cross examination of Louise Jones, the prosecutor elicited information regarding Jones' prior conviction for domestic violence.
 {¶ 15} On January 30, 2002, the jury convicted Jones of intimidation, in violation of R.C. 2921.04, a felony of the third degree, and assault with a peace officer specification, in violation of R.C. 2903.13, a felony of the fourth degree. On February 27, 2002, Jones was sentenced to two years on the intimidation conviction and one year on the conviction of assault on a peace officer. Both counts were to run concurrently. Jones received a 34-day jail credit, and the trial court ordered post-release control under R.C. 2967.28.
 {¶ 16} A motion for a new trial was filed on February 26, 2002. The basis for this motion was that a defense witness, Brian Graham, although duly subpoenaed, failed to appear in court to testify, resulting in prejudice to Jones.
 {¶ 17} Before the trial court issued its ruling on the motion for a new trial, Jones timely filed an appeal in this court. On April 4, 2002, Jones' motion for new trial was denied by the trial court while his case remained pending in this court. The journal entry reads, "motion for new trial by defendant is denied as untimely and without merit." On April 9, 2002, Jones filed an addendum to his motion for new trial with the trial court.
 {¶ 18} Jones presents five assignments of error for our review. The first assignment of error states:
 {¶ 19} "I. The Appellant Was Denied Effective Assistance Of Counsel Where, Inter Alia, Counsel Failed To Request A Continuance Or Obtain A Bench Warrant In Order To Secure The Presence Of A Material Witness."
 {¶ 20} Here, Jones specifically alleges ineffective assistance of counsel in four independent ways: (1) Trial counsel failed to request a recess or continuance, or obtain a bench warrant in order to secure the presence of a material witness; (2) Trial counsel allowed a defense witness to testify regarding Jones' character thus opening the door for the prosecution to present a prior domestic violence offense; (3) Trial counsel failed to timely file a motion for new trial; (4) Trial counsel failed to request a self-defense jury instruction.
 {¶ 21} The issue before this court on appeal is whether Jones was deprived of effective assistance of counsel throughout the course of his trial. In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that: (1) the performance of defense counsel was seriously flawed and deficient; and (2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Stricklandv. Washington (1984), 466 U.S. 668, State v. Brooks (1986),25 Ohio St.3d 144.
 {¶ 22} In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner. State v. Smith (1985),17 Ohio St.3d 98; Vaughn v. Maxwell (1965), 2 Ohio St.2d 299.
 {¶ 23} The Ohio Supreme Court, with regard to the issue of ineffective assistance of counsel, held in State v. Bradley (1989),42 Ohio St.3d 136, that:
 {¶ 24} "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." Statev. Lytle (1976), 48 Ohio St.2d 391, 396-397, 2 O.O.3d 495, 498,358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910. This standard is essentially the same as the one enunciated by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668. * * *."
 {¶ 25} Even assuming that counsel's performance was ineffective, this is not sufficient to warrant reversal of a conviction. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. United States v. Morrison, 449 U.S. 361, 364-365
(1981)." Strickland, supra, at 691. To warrant reversal, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra, at 694. In adopting this standard, it is important to note that the court specifically rejected lesser standards for demonstrating prejudice.
 {¶ 26} Accordingly, to show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.
 {¶ 27} On the basis of the record before us, we find that although defense witness Brian Graham was duly and properly subpoenaed but failed to appear, trial counsel's performance did not fall below the objective standard of reasonableness when he failed to obtain Graham's presence to impeach the credibility of Officers Oliver and Zarlenga.
 {¶ 28} An attorney's failure to call a witness falls within the realm of trial tactics. As stated in the appellant's motion for new trial, there was an outstanding warrant for Graham's arrest; this information could factor into the jury's consideration of credibility and its conclusion.
 {¶ 29} The appellant refers to State v. Owens (Mar. 1, 1990) Cuyahoga App. No. 56577, for the principal that defense counsel's failure to subpoena a witness constitutes ineffective assistance of counsel. InOwens, defense counsel failed to call six known witnesses on behalf his client. These six known witnesses would have substantially and materially corroborated the client's innocence. Therefore, the court held that the failure of defense counsel to contradict the state's chief witness was more than mere trial tactics or strategies. However, the instant case deals with one reluctant witness with an existing warrant who failed to appear to testify. Graham did not witness the whole incident nor, specifically, the second encounter between Jones and Zarlenga nor hear any words spoken between the officers and Jones. Graham witnessed the officers pulling Jones out from his vehicle while stuck in heavy vehicle and pedestrian traffic. Defense counsel briefly reflected upon the noted absence of Graham and proceeded without this witness. Therefore, trial counsel was not ineffective for the decision to proceed without this witness.
 {¶ 30} Next, the appellant argues that trial counsel was ineffective by calling Louise Jones as a witness. Appellee emphasizes that Mrs. Jones's testimony was utilized not only as a character witness to demonstrate her son's peaceful nature, but was utilized to introduce evidence of the medical treatment her son received four days after the incident.
 {¶ 31} We agree with the assertion of the appellee that the testimony of Mrs. Jones was part of the strategy of trial counsel to introduce evidence of provocation by the police officers and a justified response by Jones.This strategy was further demonstrated when trial counsel questioned both officers regarding the citizen's report filed by Jones against the officers with the police review board.
 {¶ 32} Additionally, in State v. Hunt (1984), Ohio App.3d 310, this court held the decision to call witnesses falls within the purview of trial strategy, and this court will not substitute its judgment for that of the trial court. Therefore, trial counsel was not ineffective by calling Louise Jones as a witness.
 {¶ 33} The appellant argues that counsel was ineffective by failing to request a self-defense jury instruction. In State v. Freeman
(Dec. 14, 2002), Cuyahoga App. No. 76906, this court held, "by referring to some elements of self-defense and suggesting its possibility, Freeman's lawyers, in fact, gave the jury the opportunity to acquit him of the charge without requesting specific instructions. Had those instructions been requested, the jury would have been alerted to Freemen's burden to prove the defense and the missing elements in his assertion of the defense."
 {¶ 34} In Ohio, the affirmative defense of self-defense must be proved by a preponderance of the evidence. State v. Perez (1991),72 Ohio App.3d 468. A defendant must establish the elements of self-defense: he reasonably believed he was in danger and the force used in defense was reasonable in light of the threatened harm. Chillicothev. Knight (1992), 75 Ohio App.3d 544.
 {¶ 35} In this case, Jones alleges the officers intimidated and assaulted him by spitting in his face, excessively tightening his handcuffs and forcefully dragging him out of his vehicle. These allegations were not corroborated and, in fact, were directly contradicted by the testimony of Officers Oliver, Zarlenga and Sgt. Strother.
 {¶ 36} The testimony demonstrates that Jones initially placed the officers and the surrounding public at risk by the reckless operation of his vehicle after a crowded baseball game. He refused to comply with orders by the police officers to identify himself and exit his vehicle. His behavior escalated to a point where the application of force became necessary to remove him from his vehicle and place him in the police cruiser. Jones was not able to meet the burden that he reasonably believed he was in danger and the force he used in assaulting Officer Zarlenga was reasonable in response to the threatened harm. Therefore, trial counsel was not ineffective in failing to request the jury instruction on self-defense.
 {¶ 37} Last, the appellant argues that trial counsel was ineffective by failing to file a timely motion for a new trial. In accordance with the elements in Strickland v. Washington (1984),466 U.S. 668, appellant must prove that, but for its untimeliness, the motion for a new trial would have been granted. The trial court stated in its journal entry: "motion for new trial by defendant is denied as untimely and without merit." Thus, the court denied the motion because it lacked substance as well as the untimely procedural defect. The first assignment is without merit.
 {¶ 38} "II. The Final Verdict Was Against The Manifest Weight Of The Evidence."
 {¶ 39} Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court "has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial." State ex rel. Squire v. City of Cleveland (1948),150 Ohio St. 303, 345.
 {¶ 40} The standard employed when reviewing a claim based upon the weight of the evidence is not the same standard to be used when considering a claim based upon the sufficiency of the evidence. The United States Supreme Court recognized these distinctions in Tibbs v.Florida (1982), 457 U.S. 31, where the court held that unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal, i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43.
 {¶ 41} Upon application of the standards enunciated in Tibbs, the court in State v. Martin (1983), 20 Ohio App.3d 172, set forth the proper test to utilize when addressing the issue of manifest weight of the evidence. The Martin court stated:
 {¶ 42} "There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence. Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 {¶ 43} Moreover, it is important to note that the weight of the evidence and the credibility of the witnesses are issues primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. Hence, we must accord due deference to those determinations made by the trier of fact.
 {¶ 44} The appellant claims that the jury clearly lost its way in convicting him on the charges of intimidation and assault. He was convicted of intimidation, a felony of the third degree, in violation of R.C. 2921.04, which provides in pertinent part:
 {¶ 45} "(B) No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness."
 {¶ 46} Specifically, the appellant argues he did not possess the requisite mens rea of "knowingly" under the statute. He alleges he did not have an understanding of what constitutes an unlawful threat that influences, intimidates, or hinders, thus, he did not act knowingly.
 {¶ 47} The word "knowingly" is defined in R.C. 2901.22(B) as follows: "a person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 48} Jones repeatedly refused to comply with police orders to exit his vehicle and display identification. In addition, Jones was described by Officers Oliver and Zarlenga as belligerent, hostile and agitated. He used profanity towards Officer Zarlenga and threatened to kill him and his family. Officer Zarlenga testified he was concerned for his and his family's safety. The elements for intimidation were met through the testimony of the witnesses.
 {¶ 49} The appellant was further convicted of assault, a felony of the fourth degree, in violation of R.C. 2903.13, which reads in pertinent part:
 {¶ 50} "(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn.
 {¶ 51} "(B) No person shall recklessly cause serious physical harm to another or to another's unborn.
 {¶ 52} "(C) Whoever violates this section is guilty of assault. Except as otherwise provided in division (C)(1), (2), or (3) of this section, assault is a misdemeanor of the first degree.
 {¶ 53} "* * *
 {¶ 54} "(3) If the victim of the offense is a peace officer, a firefighter, or a person performing emergency medical service, while in the performance of their official duties, assault is a felony of the fourth degree.
 {¶ 55} "* * *."
 {¶ 56} The appellant specifically argues that the state did not prove that he possessed the mens rea of "knowingly" to commit this crime of assault. He argues that in order to convict him for this crime of assault, he would have to possess knowledge that he was going to pin Officer Zarlenga's hand between the doorjamb and cage of the police cruiser.
 {¶ 57} Again, by refusing to comply with police orders and submit to their authority when he was placed in the cruiser, the appellant possessed the requisite knowledge that his conduct, as demonstrated by his resistance, kicking, head butting, shoulder butting and flailing about, would probably cause a certain result. This assignment of error is without merit.
 {¶ 58} "III. The Trial Court Erred By Inviting The Jurors To Ask Questions During The Trial."
 {¶ 59} The appellant argues that the practice of allowing the jury to pose questions to the witnesses is structurally defective and constitutes prejudicial error. He cites the decision of the Hamilton County Court of Appeals in State v. Gilden (2001), 144 Ohio App.3d 69, where the court held it was reversible error, regardless of an objection at trial or an affirmative showing of prejudice, for a trial court to allow jurors to ask questions of witnesses, whether directly or through a written question method.
 {¶ 60} The trial court in this case allowed the jurors to take notes and to ask questions of the witnesses by writing their questions on paper. The court then held a side bar conference with both attorneys to discuss the questions posed by the jury. The judge made the ultimate decision on whether the question was proper to pose to the witness, and each attorney had the final opportunity to ask follow-up questions of the witnesses after each of the jurors' questions was posed.
 {¶ 61} In Gilden, the trial court allowed juror questioning of witnesses under the same circumstances. In Gilden, the First Appellate District acknowledged that its holding is in conflict with other Ohio courts which have discussed this issue. 144 Ohio App.3d 69. The appellate districts that have discussed this issue have held the trial court must employ its discretion in deciding whether to allow juror questions of the witnesses and should not be reversed absent a showing of prejudice. Statev. Wayt (1992), 83 Ohio App.3d 848; State v. Sheppard (1955),100 Ohio App. 345 affirmed on other grounds (1956) 165 Ohio St. 293;State v. Cobb (July 24, 2000), 2000-Ohio-1712, Seneca App. No. 13-2000-07;Logan v. Qulillen (Oct. 27, 1995), Hocking App. No. 94 CA 26; State v.Mascarella (July 6, 1995), Tuscarawas App. No. 94 AP100075; State v.Sexton (Nov. 24, 1982), Clark App. No. 1689; State v. Ernst (Oct. 29, 1982), Sandusky App. No S-82-7.
 {¶ 62} This court established this position in State v. Sheppard
(1955), 100 Ohio App. 345, which held the questioning of witnesses by the jury lies within the discretion of the trial court. The Tenth District Appellate Court encountered the same issue in State v. Fisher (2001), Ohio 8772 No. 01AP-614, after the decision in the Gilden court. The Fisher
court allowed jurors to submit questions to the witnesses in writing. The court would then determine if the questions were proper and allow counsel to review them. The Fisher court held the questioning of the witnesses by the jury should be reviewed on a case-by-case basis to determine if there was an abuse of discretion. Ohio 8772 No. 01AP-614. The Ohio Supreme Court acknowledged a conflict between the Gilden and Fisher cases. The matter is currently pending. State v. Fisher (2002), 94 Ohio St.3d 1484.
 {¶ 63} Therefore, under the Sheppard standard from this court, an abuse of discretion standard shall be applied to the trial court's decision to permit written questions to the witnesses. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v.Clark (1994), 71 Ohio St.3d 466, 470, [*4] 644 N.E.2d 331; State v.Moreland (1990), 50 Ohio St.3d 58, 61, 552 N.E.2d 894; State v. Adams
(1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144. In order to have an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Nakoffv. Fairview Gen. Hosp. (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1. Moreover, when applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. In re Jane Doe I (1991), 57 Ohio St.3d 135, 138, 566 N.E.2d 1181;Berk v. Matthews (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301.
 {¶ 64} The process through which the trial court permitted juror questioning of the witnesses did not prejudice the appellant in the instant case. The jurors' questions were reviewed by the attorneys and the court before being presented to the witnesses. Furthermore, the attorneys were permitted to ask follow-up questions of the witnesses after the jurors' questions. This assignment of error is without merit.
 {¶ 65} Assignments of Error IV and V have common factual and legal issues and shall be addressed simultaneously.
 {¶ 66} "IV. The Trial Court Erred In Ruling On Appellant's Motion For A New Trial Once This Court Obtained Jurisdiction Pursuant TO Appellant's Notice Of Appeal."
 {¶ 67} "V. The Trial Court Erred In Failing To Consider And Grant The Appellant's Motion For A New A Trial."
 {¶ 68} In State v. Williams (1993), 86 Ohio App.3d 37, the Court of Appeals in Pickaway County held the filing of a notice of appeal divests the trial court of jurisdiction over a subsequently filed motion for a new trial. Pursuant to App.R. 4(C), if a motion for a new trial is pending in the trial court, a notice of appeal is premature unless the filing of the notice of appeal constitutes abandonment of the motion.
 {¶ 69} The motion for a new trial in the trial court was filed on February 26, 2002, prior to the filing of the notice of appeal in this court. Therefore, the appeal to this court pertaining to the erroneous denial of the motion for new trial is premature. However, this court will proceed to examine the merits of the ruling.
 {¶ 70} The motion for new trial was based upon the testimony of a reluctant witness, Brian Graham. Graham's proposed testimony, as stated in the filed transcript with the motion for new trial, contradicted the testimony of the two officers, Oliver and Zarlenga, and created the inference of self-defense by Jones.
 {¶ 71} Graham alleges that, although there was a warrant for his arrest, this was not the reason he did not appear to testify for the defense. Graham alleges he was confused about the date and he was unable to make arrangements for transportation to the court on the day of trial. Graham's sworn testimony indicates he failed to contact Jones' attorney, although asked to do so several times. Jones informed his attorney that Graham's testimony was extensive, but Graham failed to make arrangements to discuss this "pertinent" testimony with Jones' trial counsel prior to trial. Only after the trial and subsequent conviction did Graham agree to give a sworn statement and transcribed testimony to aid in the defense of Jones. In light of the above-mentioned issues pertaining to Graham's proposed testimony, Jones' counsel made a tactical decision not to call an unreliable and questionable witness to the stand. Therefore, the trial court's ruling that the motion for new trial was untimely and without merit was not an abuse of discretion. This assignment of error is without merit.
Judgment affirmed.
ANNE L. KILBANE, P.J., AND TIMOTHY E. McMONAGLE, J., CONCUR.